Jessica M. Brink
8 Gordon Court
Port Monmouth, NJ 07758
Phone: (732) 492-4690
Email: jessb11@me.com

| | |
|---|---|
| JESSICA M. BRINK<br><br>Plaintiff,<br><br>vs .<br><br>JOHN BORMANN, individually and in his official capacity as Superintendent and Chief Administrative Officer of the Rumson School District; MARIA MONTANEZ, individually and in her official capacity as School Nurse in the Rumson School District; BOARD OF EDUCATION OF RUMSON IN THE COUNTY OF MONMOUTH, a body politic and corporate.<br><br>Defendants. | IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CLAIM FOR DAMAGES** |

## COMPLAINT

Comes now, Plaintiff, Jessica Brink ("Brink") in pro se, files the within Complaint and in support thereof avers as follows:

## INTRODUCTION

1.  This is an action brought pursuant to U.S.C. §§ 1983 and 1985, the First and Fourteenth Amendments to the United States Constitution, and under the law of the State of New Jersey.

2.   Plaintiff Brink alleges that Defendants conspired to restrain Plaintiff's protected speech, did restrain her speech, denied Plaintiff equal privileges of the law, denied Plaintiff's petition for redress of grievances, terminated Plaintiff's employment in a retaliation for protected activity, and falsely stigmatized and defamed Plaintiff without due process.

3.   Plaintiff's protected activity related to matters of significant public concern including informed consent and the welfare of children.

4.   Plaintiff alleges these constitutional violations were committed as a result of negligence, failure to train, and the policies and customs of the Rumson Board of Education.

## JURISDICTION AND VENUE

5.   This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States and 42 U.S.C. §§ 1983 and 1985, and the Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2203.  This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the New Jersey state law pursuant to 28 U.S.C. § 1367.

6.   Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b) in that the alleged unlawful practices were committed in Monmouth County, New Jersey while Plaintiff was employed by Defendants.

## PARTIES

7.   Plaintiff, Jessica Brink, ("Brink") is an individual who at all times relevant, resided in Monmouth County, State of New Jersey.

8.  Defendant, John Bormann ("Bormann"), is an individual and in his official capacity acts as Superintendent and Chief Administrative Officer employed by the Rumson School District in Monmouth County, New Jersey.

9.  Defendant, Maria Montanez ("Nurse Montanez"), is an individual and in her official capacity acted as Certified School Nurse in the Forrestdale School, employed by the Rumson School District in Monmouth County, New Jersey.

10. Defendant, Board of Education of Rumson in the County of Monmouth ("Rumson BOE"), is a Board of Education in the Rumson School District (RSD), created pursuant to New Jersey law.

## STATEMENT OF FACTS

11. In September 2020 Plaintiff Brink was recruited by Defendant Bormann for a position as School Nurse Permanent Substitute for the RSD.

12. Defendant Bormann explained that RSD needs "extra hands" on a daily basis during the pandemic and once the pandemic is over, Plaintiff would retain her role as Permanent Substitute in the RSD.

13. Plaintiff Brink and Defendant Bormann entered into a verbal contract in which Plaintiff would provide Substitute School Nurse services on a permanent basis to the Rumson School District, starting September 25, 2020, for a daily rate of $200.00.

14. On October 1, 2020 Plaintiff Brink signed a contract for "School Nurse Permanent Substitute" detailing a start date of "September 25, 2020 to a date to be determined, hired and paid through ESS at a rate of $200/day." Exhibit 1.

15. By signing Plaintiff Brink accepted the appointment and acknowledged that the position did not acquire tenure.

16. Plaintiff Brink acknowledged that she would not acquire tenure as a substitute, however Plaintiff understood the position to be permanent in the sense that she could not be terminated without good cause.

17. Plaintiff Brink's contract was retroactively approved by the Rumson BOE at a school board meeting held on October 28, 2020. Exhibit 2.

18. Plaintiff Brink was, for all intents and purposes, an employee of the RSD.

19. Plaintiff Brink reported for work daily Tuesday through Friday to the RSD.

20. Plaintiff Brink received direction and assignment directly from RSD staff, specifically Defendant Bormann, Defendant Nurse Montanez, and Nurse Zajac.

21. Plaintiff Brink's schedule was determined by RSD staff and approved by Defendant Bormann.

22. Plaintiff Brink was issued a RSD Identification Badge, lap top computer with log in credentials, an @rumsonschool.org email address, RSD Parking Permit, and keys to exterior and interior doors of Deane Porter School and Forrestdale School.

23. Plaintiff Brink had her picture taken for the school yearbook.

24. Plaintiff Brink's limited interaction with ESS included the application process, a background check, and payroll functions.

25. Plaintiff Brink worked daily as a supplement to the two (2) existing certified school nurses - Defendant Nurse Montanez and Nurse Zajac.

26.  Occasionally, when one certified school nurse was absent, Plaintiff Brink worked with remote supervision from the certified school nurse within the RSD complex.

27.  Plaintiff Brink's duties were directed by Defendant Nurse Montanez, Nurse Zajac, and Defendant Bormann.

28.  Plaintiff Brink's duties included:

    a.  Monitoring the "Quarantine Room" each morning.

    b.  Contacting parents/guardians of children who were confined in the "Quarantine Room" because their COVID Screening Form was incomplete, and asking the parent/guardian to complete the form.

    c.  Contacting parents/guardians of children to investigate absence, reported illness, travel, sick contacts.

    d.  Addressing emergent issues for example, lost tooth, sprained ankle, symptomatic illness.

    e.  Arranging for the pickup of any child who reported COVID-like symptoms, as well as any of their siblings currently in school within the Rumson School District.

    f.  Communicating with fellow nurses, Defendant Bormann, principals, and secretarial staff, regarding children being excluded from school.

    g.  Escorting children out of school and into the custody of a parent/guardian and when necessary, explaining the Rumson Schools District's policy on quarantine and testing.

    h.  Documenting student-related interactions in the student's health record.

29.    In the course of daily activities Plaintiff Brink observed clinically questionable and potentially unlawful activity, for example:

    a.    Untrained or poorly trained non medical personnel incorrectly using non contact thermometers to take students' forehead temperatures immediately after entering the building from outside, in conditions near freezing, resulting in temperature readings of ninety-two (92) degrees Fahrenheit, a dangerously low body temperature and virtually useless for identifying symptoms of infectious illness.

    b.    Twenty (20) or more middle school students confined to the "Quarantine Room" because their COVID-19 Screening forms were NOT COMPLETE.

    c.    Students whose COVID-19 Screening forms were NOT COMPLETE confined with students whose forms were NOT PASS (meaning they reported having possible symptoms of COVID-19).

    d.    Students remaining confined to the "Quarantine Room" for an hour or more because their COVID-19 Screening form was incomplete.

    e.    Students whose COVID-19 Screening forms were frequently incomplete were singled out and placed on the "Naughty List."

    f.    Students frequently, publicly reprimanded for not wearing their masks correctly in the hallways, despite having to carry books, backpacks, water bottles, plexiglass dividers, etc.

    g.    Personally identifiable information of staff, students, and family members entered into a Google Doc "Quarantine Spreadsheet" and shared with multiple staff across two (2) schools.

    h.   Students and staff compelled to quarantine away from school for fourteen (14) days or more without due process or court order.

    i.   A requirement that students take a RT-PCR rather than a antigen test before readmission to in-school learning.

    j.   Students who traveled out of state being disproportionately affected by quarantine.

    k.   Parents/guardians frustrated, confused, and angry regarding the treatment of their children with no clear path to address their concerns.

    l.   RSD policies and procedures, in some instances, contrary to official guidance.

30.    One day in December Plaintiff Brink, Defendant Nurse Montanez, and Defendant Bormann were gathered together in the Forrestdale Nurse's office.

31.    Plaintiff Brink voiced her concerns about these clinically questionable and potentially unlawful actions of the RSD.

32.    Defendant Bormann explained that schools can go above and beyond what the state recommends.

33.    On December 28, 2020, Defendant Bormann sent Plaintiff Brink an email advising that Defendant Bormann provided Plaintiff Brink's name to the New Jersey Department of Health to get Plaintiff Brink "on the list" to get the COVID-19 vaccine.   Exhibit 3.

34.    Plaintiff Brink was shocked and dismayed that Defendant Bormann would respond to a medically-based question on behalf of the Plaintiff without her input or consent and without knowing if Plaintiff had a moral, religious, or medical objection to COVID-19 vaccination.

35.   Plaintiff Brink responded, stating that she would not be getting the COVID-19 vaccine for personal reasons and offered, in her personal capacity as a Patient Advocate, to share her reasoning with Defendant Bormann so that he could be fully informed on all aspects of this new vaccine. Exhibit 3.

36.   Defendant Bormann responded that he was in no position to have an opinion on the matter and that he can only provide the opportunities and follow the guidance. Exhibit 3.

37.   Plaintiff Brink observed a concerted effort by the RSD to encourage COVID-19 vaccination.

38.   Defendant Nurse Montanez shared multiple vaccine-related email messages with the Forrestdale School staff including:

   a.   Incorrect information stating that the Pfizer-BioNTech vaccine was "approved". Exhibit 4.

      i.   EMERGENCY USE AUTHORIZATION (EUA) OF THE PFIZER-BIONTECH COVID-19 VACCINE TO PREVENT CORONAVIRUS DISEASE 2019 (COVID-19) states five (5) times that the Pfizer-BioNTech vaccine is "unapproved".

   b.   A detailed description of Nurse Montanez' experience receiving her first COVID-19 vaccination, including pictures of her Vaccine Card and upper arm with band-aid. Exhibit 5.

39.   Defendant Bormann shared weekly vaccine-related email messages with the RSD including:

   a.   Internet links to COVID-19 vaccine information.

    b.      Email messages from State government regarding COVID-19 vaccine roll-out.

    c.      Vaccine-related surveys. Exhibit 6.

    d.      Email messages to specific staff members expressing his opinion and encouragement for the COVID-19 vaccination. Exhibit 7.

40. On January 7, 2021 Plaintiff Brink sent an email message to Defendant Bormann titled "A resource" to offer herself, in a private capacity as an independent Registered Nurse Patient Advocate, as a resource to the staff regarding the COVID-19 vaccine roll-out. Exhibit 8.

41. Plaintiff Brink felt a strong moral obligation to ensure that her fellow citizens had true informed consent and understanding of the medical terminology in the Emergency Use Authorization documentation.

42. Plaintiff Brink stated in the email message that Plaintiff's "only purpose is to ensure they [the staff] have the information they need, and understand the jargon in the documentation."

43. Plaintiff Brink stated "I will review the CDC/FDA supplies (sic) documents and stick to the facts."

44. Plaintiff Brink's email message in no way referenced any personal grievances.

45. Plaintiff Brink's email message clearly pertained to matters of public concern.

46. Plaintiff Brink's email message and intended speech in no way caused disruption or disharmony within the school, nor did it affect Plaintiff Brink's job responsibilities.

47. On January 8, 2021, Defendant Bormann collaborated with Dr. Carmela Rocchetti, a parent of a Rumson School District student, a doctor at Hackensack Meridian Health

(HMH) and a representative for the "Reopening America" consultant service,  to design

the "right [vaccine] survey questions …framing… drive(s) health behavior"  Exhibit 9.

48.    Defendant Bormann also collaborated with Dr. Carmela Rocchetti to plan a vaccination

event giving RSD staff preferential access to vaccines provided by Hackensack Meridian

Health. Exhibit 9.

49.    Plaintiff Brink has reason to believe and does believe that the RSD and Hackensack

Meridian Health have a financial interest in vaccinating the RSD staff with the

COVID-19 vaccination.

50.    On January 8, 2021 Defendant Bormann forwarded Plaintiff Brink's email message titled

"A resource" to Defendant Nurse Montanez asking, "In full confidentiality, what do you

think about this?" Exhibit 10.

51.    Defendant Nurse Montanez responded *inter alia*, "we need to provide staff and parents

with the information and let them decide how to proceed with this NEW vaccine.  Like it

or not working in a school has a political component and you have to be mindful when

and how you should share.  I feel uncomfortable with having a permanent sub nurse do

this as I am not sure what information will be relayed."  Exhibit 10.

52.    On January 9, 2021 Defendant Bormann responded to Plaintiff Brink's email message "A

resource" stating *inter alia* "it would not be appropriate to provide advocacy one way or

another.  It is our role as a public entity to provide only the factual information available

from government institutions we are required to follow…"  Exhibit 10.

53.    Defendant Bormann and Defendant Nurse Montanez conspired to restrain Plaintiff

Brink's protected speech regarding COVID-19 vaccination.

54.    Defendant Bormann restrained Plaintiff Brink's protected speech for no rational or legitimate reason.

55.    Defendant Bormann and Defendant Nurse Montanez harbored personal animus toward Plaintiff Brink because of her personal choice to refuse the COVID-19 vaccination.

56.    On January 12, 2021 Plaintiff Brink was working independently in Forrestdale School when Nurse Zajac at Deane Porter School notified Plaintiff Brink that a child in Deane Porter School was being sent home with a fever.

57.    Plaintiff Brink was directed by Nurse Zajac to send the ill child's sibling, who was in attendance at Forrestdale School, home as well.

58.    As directed, Plaintiff Brink contacted the Mother of the Forrestdale child and explained that based on RSD policy, this child would also need to be excluded from school.

59.    The Mother stated that because of the young age of the symptomatic child, she did not plan to test for COVID-19.

60.    Plaintiff Brink explained to the Mother that without testing, the Deane Porter child would be considered COVID positive, and based on Center for Disease Control (CDC) and New Jersey Department of Health (NJDOH) guidelines and a current statewide activity level of HIGH, a voluntary fourteen (14) day self-quarantine was recommended.

61.    Midday on January 12, 2020, Plaintiff Brink noticed that Defendant Bormann had entered a ten (10) day quarantine into the "Quarantine Spreadsheet" for the Forrestdale child.

62.    Plaintiff Brink sent an email message to Jennifer Gibbons, the Principal of Forrestdale School, expressing Plaintiff's confusion over the discrepancy in the number of days of recommended quarantine.  Exhibit 11.

63.   Principal Gibbons replied "I had the same question for Dr. B he indicated 10 day."
Exhibit 11.

64.   The next morning Plaintiff Brink, Defendant Bormann, Principal Gibbons, and Defendant
Nurse Montanez were gathered together in the hallway outside the Forrestdale
"Quarantine Room."

65.   Plaintiff Brink initiated a discussion regarding the question both Plaintiff and Principal
Gibbons had regarding the recommended quarantine period for close contacts.

66.   After a lengthy discussion, Plaintiff Brink was still unclear regarding the inconsistency
and lawfulness of Defendant Bormann's quarantine recommendations.

67.   Plaintiff Brink could not identify a clear grievance policy for someone in Plaintiff's
position - permanent, non-tenured Professional Staff, without a labor union negotiated
agreement.

68.   Plaintiff Brink resorted to using Rumson BOE Policy SUPPORT STAFF MEMBERS
4340 GRIEVANCE as a guide to voice her concerns.

69.   Shortly after the meeting in the hallway, Plaintiff Brink composed an email message
addressed to Defendant Bormann, Principal Gibbons, Defendant Nurse Montanez, Nurse
Zajac, and Shari Feeney, Principal of Deane Porter School.

70.   In an email message dated January 13, 2021, titled "Requesting some clarity" Plaintiff
Brink stated her grievance regarding discrepancies in interpretation and implementation
of official guidance and RSD Polices and Protocols. Exhibit 12.

71.   Plaintiff Brink's grievance concerned the wellbeing of students, staff, and their families.

72.   On January 15, 2021 Plaintiff Brink shared with Defendant Bormann, Defendant Nurse Montanez and Nurse Zajac, a Google Doc titled "COVID Quarantine Decision Tool - Draft - Invitation to edit", which further outlined the unresolved problems concerning the interpretation of RSD Policies and Protocols. Exhibit 13.

73.   On January 27, 2021, Plaintiff Brink was advised that Nurse Zajac needed time off and Plaintiff was asked to work independently at Deane Porter School for an undetermined amount of time.

74.   Plaintiff Brink agreed to cover for Nurse Zajac, but first wanted to meet with Defendant Bormann because Plaintiff's concerns regarding medical policies and protocols had not been addressed.

75.   When Plaintiff Brink mentioned to a colleague that Plaintiff was planning to meet with Defendant Bormann, the colleague warned Plaintiff to be careful as Defendant Bormann does not like to be challenged.

76.   Plaintiff Brink and Defendant Bormann met by phone conference on February 1, 2021 at 11:15 am. Exhibit 14.

77.   During this meeting, Plaintiff Brink petitioned Defendant Bormann, as Superintendent and Chief Administrative Officer of RSD, to redress the grievances Plaintiff posed in earlier email messages and conversations.

78.   Plaintiff Brink's grievances related to matters of public concern that the parents and community were unaware of - the welfare, treatment, and privacy of staff and school children.

79.    No parents, guardians, visitors, or members of the community were permitted to enter the Forrestdale or Deane Porter school because of the COVID-19 pandemic.

80.    Official guidance from the CDC stated "Regardless of factors above, schools should ensure that their policies follow the recommendations of local public health officials and are consistent with Federal, state, and local laws, including FERPA." Exhibit 15.

81.    Official guidance from the CDC warned of potential harms: "**Excluding students from school for longer than what is typically called for in existing school policies** - without considering the student's usual health and without assessing the likelihood the student was exposed to the virus that causes COVID-19 - **risks repeated, long term, and unnecessary student absence and possible unintended harm.**" Exhibit 16.

82.    Official guidance from the United States Department of Education, Student Privacy Office stated: "This "health and safety emergency" exception to FERPA's general consent requirement is limited in time to the period of the emergency and generally does not allow for a blanket release of PII from student education records." Exhibit 17.

83.    Plaintiff Brink asked Defendant Bormann to share the written law, policy, or official guidance that authorizes the Rumson School District to do things like confining children to the "Quarantine Room", accepting only RT-PCR testing, compelling children to quarantine without a court order, inconsistently applying quarantine guidance, storing staff and students' private health information in a shared Google Doc "Quarantine Spreadsheet."

84. Plaintiff Brink asked under what authority does Defendant Bormann make medical decisions, when according to state statute, if a medically licensed person (physician or nurse) is present, the licensed person is responsible for excluding the student.

85. Defendant Bormann stated that everything was shared in email messages or on the RSD website.

86. Defendant Bormann stated that Plaintiff Brink was clearly not comfortable with the expectations of the job and that it would probably be best if she did not continue her role in the RSD.

87. Plaintiff Brink explained that she was completely confident in her skill as a nurse, yet one of the major things Plaintiff Brink needed to do her job effectively and in accordance with a nurse's scope of practice and license, is written, valid, policy and procedure.

88. Plaintiff Brink asked Defendant Bormann if he was terminating her contract with the Rumson BOE.

89. Defendant Bormann responded saying that Plaintiff Brink was free to work for ESS in other districts, but she was no longer welcome in the RSD District, and that he would email ESS about the termination.

90. Plaintiff Brink, in accordance with Rumson BOE POLICY 4140 SUPPORT STAFF MEMBERS TERMINATION, requested that Defendant Bormann send her, in writing, a copy of the email message to ESS so that she could have a written reason for the termination.

91. Defendant Bormann refused to copy Plaintiff Brink on the termination email message, stating that she wasn't an employee.

92.  Plaintiff Brink was recruited by Defendant Bormann specifically and only for a permanent position in the RSD.

93.  Plaintiff Brink never had any intention or desire to work in other school districts.

94.  Plaintiff Brink was foreclosed from working in the RSD as a nurse or otherwise.

95.  Plaintiff Brink's termination happened eighteen (18) days after Plaintiff voiced a grievance, and immediately during a discussion of that grievance.

96.  Plaintiff Brink's grievance was based on actual examples of inconsistent implementation of Rumson BOE protocols, protocols in conflict with law and official guidance, unequal treatment of children, and personal privacy concerns - issues Plaintiff conscientiously believed to be potential government malfeasance.

97.  Defendant Bormann, as Superintendent of the RSD and member of the Rumson BOE, had a duty and obligation to investigate Plaintiff Brink's legitimate concerns.

98.  Despite being hired as permanent, with all the attributes of a RSD employee, Plaintiff Brink was provided no written reason or due process prior to termination.

99.  Upon ending the meeting, Plaintiff Brink composed a letter to all members of the Rumson BOE, including Defendant Bormann, explaining what just transpired between Plaintiff Brink and Defendant Bormann. Exhibit 18.

100.  Plaintiff Brink was extremely upset and emotional.

101.  Plaintiff Brink's primary role was to protect the health and welfare of the children and staff of the RSD.

102.  Defendant Bormann refused to address Plaintiff Brink's legitimate concerns regarding the clinical soundness and lawful authority of the Rumson BOE policies and procedures.

103.    Plaintiff Brink provided her personal email address so members of the Rumson BOE could reach her privately.

104.    Plaintiff Brink received no response from any Rumson BOE member.

105.    Beginning in April 2021 Plaintiff Brink lodged multiple Open Public Records Act (OPRA) requests with the Business Administrator of the RSD.

106.    One such request returned responsive records related to the termination of Plaintiff Brink.

107.    In an email message from Defendant Bormann to the Rumson BOE Members dated February 1, 2021 at 9:27 pm, in response to Plaintiff Brink's earlier email message "Termination - Permanent School Nurse Substitute", Defendant Bormann stated *inter alia* "..this sub nurse was questioning and indicating she would not follow district protocols. As per our contract with ESS we have the right to request a sub not be assigned to our schools. They have been notified and confirmed as has been done with other subs in the past. Please know that this is the culmination of other concerns growing with this substitute nurse, including her request to send anti-vaccination guidance to our staff and conversations that have made both our school nurses uncomfortable. We are currently seeking a sub nurse through HMH." Exhibit 19.

108.    Rumson BOE hired a replacement "Substitute School Nurse" four (4) days after Plaintiff Brink's termination. Exhibit 20.

109.    In an email from Defendant Bormann, by way of his secretary, to ESS stated that the reason for Plaintiff Brink's termination was "Mrs. Brink was found not to be a good fit in the district." Exhibit 21.

110.    Defendant Bormann was deceitful when responding to the Rumson BOE regarding

      Plaintiff Brink's email message titled "Termination..."

111.    Defendant Bormann stated that Plaintiff Brink was 'indicating that she would not follow

      district protocols."

112.    Plaintiff Brink never refused to follow district protocols.

113.    Plaintiff Brink continued to follow orders while making every attempt to confirm that

      district protocols were clinically sound and verifiably lawful.

114.    Defendant Bormann was in possession of Plaintiff Brink's grievance for eighteen (18)

      days and failed to act, respond, or forward the grievance.

115.    Defendant Bormann stated that Plaintiff Brink "request[ed] to send anti-vaccination

      guidance to our staff."

116.    Plaintiff Brink provided the exact text she intended to share with the RSD Staff; that text

      did NOT include any anti-vaccination guidance.

117.    Plaintiff Brink's clearly stated intention was to provide CDC and FDA approved

      documentation, just as Defendant Nurse Montanez and Defendant Bormann had done.

118.    Staff of the RSD had a right to read the factual information contained in Plaintiff Brink's

      protected speech.

119.    Defendant Rumson BOE had a duty and obligation to review the legitimate concerns

      listed in Plaintiff Brink's grievance.

120.    Defendant Bormann did not, and could not articulate any truthful, legitimate reason for

      Plaintiff Brink's termination.

121. Defendant Rumson BOE voted on and approved the contract for Plaintiff Brink as a "Permanent" employee "to a date to be determined."

122. Employees hired directly by the Rumson BOE, tenured and non-tenured, are afforded some form of written reason and basic due process before termination.

123. Plaintiff Brink was afforded no protections despite being a permanent employee hired through a private contractor and functioning exactly like an employee hired directly by the Rumson BOE.

124. Defendant Rumson BOE condoned Defendant Bormann's termination of Plaintiff Brink without input, approval or review of the full board.

125. After termination from the RSD Plaintiff Brink was very distraught over not being able to help the school children and because Plaintiff lost her main source of wages.

126. Plaintiff Brink felt a strong moral conviction to help the school children, so Plaintiff became a pro bono, full-time advocate for school children in New Jersey.

127. Plaintiff Brink experienced high anxiety, disturbed sleep, bouts of helplessness and anger, weight loss, and abdominal pain in the weeks and months after termination from the RSD.

128. Plaintiff Brink suffered mentally, physically and financially from the unconstitutional and negligent actions of Defendant Bormann, Defendant Nurse Montanez, and Defendant Rumson BOE.

129. The staff and students of the RSD also suffered harm because Defendant Bormann and the Defendant BOE deprived Plaintiff Brink of her First Amendment rights to protected speech.

130. During Plaintiff Brink's employment with the RSD from September 25, 2020 to February 1, 2021, Plaintiff never refused to complete an assigned task, nor was Plaintiff counseled or cited for any negative action, statement, or behavior.

131. Defendant Bormann's false claims, stigmatizing and defamatory comments made to the Rumson BOE are now part of the permanent record of the RSD.

132. After Plaintiff Brink's abrupt termination based on false claims, Plaintiff was stigmatized and defamed in the eyes of her colleagues of the RSD, the Rumson BOE, the staff at ESS, and her family and friends.

133. As a direct and proximate results of the acts of Defendants, Plaintiff Brink suffered the following injuries and damages:

a.  Violation of Plaintiff's constitutional rights under the First Amendment to the Constitution of the United States:

    (1)    Abridgment of speech

    (2)    Denial of ability to petition the government for redress of grievances

    (3)    Retaliation for protected activities

    (4)    Adverse employment action

    (5)    Loss of wages

    (6)    Mental, physical, and emotional pain

    (7)    Financial hardship

b.  Violation of Plaintiff's constitutional rights under the Fourteenth Amendment to the Constitution of the United States:

    (1)    Denial of equal protection of the laws

    (2)    Denial of due process

    (3)    Deprivation of a property right in continued employment

    (4)    Deprivation of a liberty right in protection of her good name, reputation, honor, and integrity.

    (5)    Mental, physical, and emotional pain

    (6)    Financial hardship

122. The actions of the Defendants violated the following clearly established and well settled federal constitutional rights of the Plaintiff:

    a.    Freedom of speech

    b.    Petition for redress of grievances

    c.    Due process

    d.    Equal protection and privileges of the laws

123. At all relevant times, Defendant Bormann was acting under color of state law and color of authority as Superintendent and Chief Administrative Officer of the Rumson School District, and as an agent of the State of New Jersey.

124. At all relevant times, Defendant Nurse Montanez was acting under color of state law and color of authority as Certified School Nurse of the Rumson School District, and as an agent of the State of New Jersey.

125. At all relevant times, Defendant Rumson BOE was acting under color of state law and color of authority in it's capacity as legislative body for the Rumson School District, and as an agent of the State of New Jersey.

**COUNT ONE**

**42 U.S.C § 1985 (3) Against Defendant Bormann and Defendant Nurse Montanez -**

**Conspiracy to Interfere with Civil Rights**

126.    Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained

in paragraphs numbered 1 through 125.

127.    Plaintiff Brink alleges that (1) Defendant Bormann conspired with Defendant Nurse

Montanez (2) for the purpose of depriving Plaintiff Brink - while acting in Plaintiff's

personal capacity, of equal privileges under the First Amendment of the Constitution of

the United States; and (3) Defendant Bormann acted in furtherance of the conspiracy by

restraining Plaintiff Brink's speech and retaliating against Plaintiff Brink for intended

speech by terminating her employment because of *inter alia* "anti-vaccination

information"; (4) Plaintiff Brink was injured in her property interest of continued

employment, and liberty interest of good reputation, and deprived of her right to free

speech as a citizen of the United States.

128.    Staff of the RSD were also harmed because they were unable to receive the factual

information Plaintiff Brink was seeking to share.

129.    Plaintiff Brink alleges that the conspiracy was motivated in bad faith by invidious animus

directed at Plaintiff because, in her personal capacity, she opposed the COVID-19

vaccine.

130.    The invidious animus initiated in the conspiracy that ultimately resulted in Plaintiff

Brink's termination was falsely predicated on Plaintiff's purported political view and

"request to send anti-vaccination guidance."

131.  Plaintiff Brink's constitutionally protected First Amendment right to speak on matters of public concern was clearly established at the time the conspiracy was initiated.

## COUNT TWO

### 42 U.S.C § 1983 Against Defendant Bormann - First Amendment Restraint

132.  Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 131.

133.  Plaintiff Brink alleges to have suffered a (1) violation of Plaintiff's First Amendment right to free speech, secured by the Constitution and the laws of the United States (2) when Defendant Bormann, acting under the color of state law, restrained Plaintiff Brink's constitutionally protected speech.

134.  RSD staff was deprived of their right to hear/read Plaintiff's speech on matters of public concern.

135.  Plaintiff Brink's constitutionally protected First Amendment right to speak on matters of public concern was clearly established at the time her speech was restrained.

136.  Defendant Bormann should have known that restraint of First Amendment protected speech is a violation of Plaintiff's constitutionally protected rights.

137.  Defendant Bormann should have known that restraining Plaintiff Brink's First Amendment protected speech on issues of public concern was a violation of clearly established law.

## COUNT THREE

### 42 § 1983 Against Defendant Bormann - First Amendment Redress of Grievances

138.    Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 137.

139.    Plaintiff Brink alleges to have suffered a (1) violation of Plaintiff's First Amendment right to petition the government for redress of grievances, secured by the Constitution and the laws of the United States (2) when Defendant Bormann, acting under color of state law, deprived Plaintiff Brink of an opportunity to have her grievances heard, then retaliated by terminating Plaintiff's employment for impermissible reasons.

140.    Plaintiff Brink, in good conscience, documented grievances relating to matters of public concern involving Defendant Bormann's actions and Defendant Rumson BOE's policies and procedures.

141.    Defendant Bormann did not address Plaintiff Brink's grievances, nor did he forward them to the full board of the Rumson BOE for consideration.

142.    Defendant Bormann should have known that Plaintiff Brink's written and verbal grievances regarding matters of public concern were First Amendment protected speech.

143.    Defendant Bormann acted as a final policy maker when deciding not to address or forward Plaintiff Brink's grievances.

144.    Plaintiff Brink's constitutionally protected First Amendment right to speak on matters of public concern was clearly established at the time her petition was denied.

145.    The full board of the Rumson BOE was deprived of it's opportunity to hear Plaintiff Brink's legitimate grievances regarding the welfare, treatment, and privacy of RSD staff and students.

146.   Plaintiff Brink was injured through the deprivation of her First Amendment right to petition the government for redress of grievances.

147.   The staff and students of the RSD were injured through deprivation of any benefit or protection they may have received because of Plaintiff Brink's grievances.

### COUNT FOUR

**42 U.S.C. § 1983 Against Defendant Bormann - First Amendment Retaliation**

148.   Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 147.

149.   Plaintiff Brink (1) engaged in protected speech and petitioned her government on issues relating to matters of public concern - COVID-19 vaccination, the clinical soundness and lawful authority of actions and policies of Defendants, and the unequal treatment and harm of children (2) Defendant Bormann retaliated by terminating Plaintiff Brink's employment, an action that would chill a person of ordinary firmness from continuing to engage in protected speech and/or to petition for grievances (3) Plaintiff Brink's protected speech and petition of grievances on matters of public concern were a substantial and motivating factor in Defendant Bormann's adverse employment action as evidenced by Defendant Bormann's documented reasons for terminating Plaintiff Brink's employment.

150.   Plaintiff Brink's First Amendment activity was undertaken out of personal concern as a citizen and nurse advocate, and was based on a matters of intense public significance.

151.   Plaintiff Brink's protected activity did not and would not have affected the efficiency of school functions, nor was it disruptive.

152. Portions of Plaintiff Brink's protected activity clearly related to breaches of public trust and potential malfeasance of government.

153. Plaintiff Brink's constitutionally protected First Amendment right to speak on matters of public concern was clearly established at the time her employment was terminated.

154. As a final policy maker, Defendant Bormann terminated Plaintiff Brink's employment for impermissible reasons, in bad faith and without due process in contravention to the First and Fourteenth Amendments of the Constitution of the United States, Article I §§ 6,18 of the New Jersey State Constitution, N.J.S.A. 18A:27-4.1, N.J.S.A. 34:19-1, Rumson BOE Policy 4140 SUPPORT STAFF MEMBERS TERMINATION, Rumson BOE Policy 4381 SUPPORT STAFF MEMBERS PROTECTION AGAINST RETALIATION.

155. Defendant Bormann maliciously and invidiously defamed Plaintiff Brink and made false stigmatizing statements when attempting to explain the adverse employment action taken against Plaintiff Brink.

156. Defendant Bormann should have known that retaliating against Plaintiff Brink for exercising her First Amendment right to protected speech on matters of public concern was a violation of clearly established law and a violation of her constitutionally protected rights, state statues, and Rumson BOE's policy against retaliation.

157. Defendant Bormann is inadequately trained on constitutionally protected rights, state statutes and Rumson BOE Policy.

**COUNT FIVE**

**42 U.S.C. § 1983 Against Defendant Bormann - Fourteenth Amendment Equal Protection**

158.  Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 157.

159.  Defendant Bormann restrained Plaintiff Brink's protected speech, as a citizen and patient advocate, regarding COVID-19 vaccination and in doing so (1) treated Plaintiff Brink differently than Nurse Montanez, a similarly situated nurse (2) Defendant Bormann did so intentionally because he did not agree with Plaintiff Brink's personal viewpoint on COVID-19 vaccination (3) there was no rational basis for the difference in treatment, as both Plaintiff Brink and Nurse Montanez were licensed medical professionals sharing COVID-19 vaccine information from governmental sources.

160.  Defendant Bormann demonstrated his disapproval and animus toward Plaintiff Brink's viewpoint by falsely claiming that Plaintiff "request(ed) to send anti-vaccination guidance to our staff."

161.  Defendant Bormann's disapproval was further motivated by Defendant Nurse Montanez' statements regarding the "political component" of working in a school and questioning the "what information will be shared" by Plaintiff Brink.

162.  Defendant Bormann and Defendant Nurse Montanez did not agree with Plaintiff Brink's personal viewpoint of the COVID-19 vaccine, and harbored personal animus because Plaintiff Brink was conscientiously challenging Defendant Bormann's actions and the protocols of the Rumson BOE.

163.  Defendant Bormann permitted Nurse Montanez, a similarly situated staff member to exercise her First Amendment right regarding matters of public concern, specifically supporting the COVID-19 vaccination.

164.   Defendant Bormann used Plaintiff Brink's protected speech as a pretext for terminating Plaintiff's employment.

165.   Plaintiff Brink was injured in that she was discriminated against and not offered equal privileges of the laws resulting in deprivation of her First Amendment right to protected speech on matters of public concern.

## COUNT SIX

**42 U.S.C. § 1983 Against Defendant Rumson BOE - Fourteenth Amendment Due Process, Liberty Interest**

166.   Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 165.

167.   Plaintiff Brink (1) was deprived by the Rumson BOE of an individual liberty interest in her good name, reputation, honor, and integrity when Defendant Rumson BOE condoned Defendant Bormann's termination of Plaintiff Brink for impermissible reasons (2) the Defendant Rumson BOE offered no procedure to provide name clearing or due process to a permanent employee in Plaintiff Brink's position.

168.   Defendant Rumson BOE should have known that the remarks falsely made by Defendant Bormann as a pretext to terminate Plaintiff Brink, were stigmatizing and defamatory.

169.   Defendant Rumson BOE should have known that Plaintiff Brink has a legitimate liberty interest in her good name, reputation, honor, and integrity that is protected by the Fourteenth Amendment.

170.   Defendant Rumson BOE did not afford Plaintiff Brink any opportunity to dispute the false claims made by Defendant Bormann or to clear her good name.

171.   Plaintiff Brink suffered injury to her good name, reputation, honor, and integrity when Defendant Bormann publicly made false, stigmatizing, and defamatory statements as a pretext for termination.

## COUNT SEVEN

### 42 U.S.C. § 1983 Against Defendant Rumson BOE - Fourteenth Amendment Due Process, Property Interest

172.   Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 171.

173.   Plaintiff Brink (1) was deprived by the Rumson BOE of an individual property interest in employment when Defendant Rumson BOE condoned Defendant Bormann's termination of Plaintiff Brink for impermissible reasons (2) the Defendant Rumson BOE offered no procedure to provide due process to a permanent employee in Plaintiff Brink's position.

174.   Defendant Rumson BOE should have known that based on constitutional protections, State statutes, Rumson BOE policy and the contractual agreement entered into by both parties, Plaintiff Brink could not have been terminated for arbitrary and capricious reasons and was therefore denied due process.

175.   Defendant Rumson BOE should have known that Plaintiff Brink had a legitimate property interest in continued employment.

176.   Plaintiff Brink suffered injury to her property interest in that both verbal and written employment contracts indicated that she was a permanent employee of the Rumson School District and had a legitimate expectation of continued employment barring good cause for termination.

## COUNT EIGHT

### 42 U.S.C. § 1983 Against Defendant Rumson BOE - *Monell* Liability

177.  Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 176.

178.  Defendant Bormann, acting as a final policy maker for Defendant Rumson BOE (1) executed policies or customs of Defendant Rumson BOE that resulted in a pattern of constitutional violations. First and Fourteenth Amendment rights of Plaintiff Brink, RSD staff and students were clearly established at the time of the incidents. (2) Defendant Bormann's pattern of conduct and refusal to address Plaintiff's concerns, show unconstitutional polices and customs, as well as a failure to train, to be substantial and moving forces behind Plaintiff's injuries.

179.  Defendant Bormann, acting as a final policy maker for Defendant Rumson BOE (1) executed a policy or custom of Defendant Rumson BOE that resulted in the retaliatory termination of Plaintiff Brink's employment.  (2) Defendant Bormann stated "we have the right to request a sub not be assigned to our schools.  She is not an employee of the district and can retain her employment with ESS.  They have been notified and confirmed as has been done with other subs in the past." This policy or custom was a substantial and moving force behind Plaintiff's injuries.

180.  Defendant Rumson BOE failed to act affirmatively at all, though they should have known that Defendant Bormann's final action in terminating Plaintiff Brink was likely to result in the violation of constitutional rights.

181. It is the custom or policy of Defendant Rumson BOE to approve contracts for 'permanent' substitute employment, then permit employees to work on a daily basis, not in the capacity of a substitute.

182. For all intents and purposes, Plaintiff Brink was an employee of the Rumson School District and Defendant Rumson BOE should have known that Plaintiff could not be terminated for unconstitutional reasons, nor be deprived of due process.

183. It is the custom or policy of Defendant Rumson BOE to hire permanent employees through ESS, use them in a daily capacity, allow them to function as employees, and deny them the benefits that are afforded to employees hired directly by the Rumson BOE.

184. It is the custom or policy of Defendant Rumson BOE to dismiss/terminate permanent employees without a written reason or due process.

185. Policies and customs of the Rumson BOE resulted in deprivation of Plaintiff Brink's constitutionally protected First and Fourteenth Amendment rights.

186. Defendant Rumson BOE permitted Defendant Bormann, a non-medical professional to make medical decisions, despite having professional, licensed medical staff on site, in contravention to N.J.S.A. 18A:40-7 and N.J.S.A. 18A:40-8.

187. Defendant Rumson BOE gave Defendant Bormann unbridled discretion with seemingly no oversight or safeguards when implementing and enforcing policies and protocols related to public health.

188. Defendant Rumson BOE devised and implemented policies and procedures that resulted in unequal treatment and harm to the children of the RSD.

189. Defendant Rumson BOE devised and implemented policies and procedures that authorized RSD staff to confine children against there will to the "Quarantine Room" for arbitrary and capricious reasons.

190. Defendant Rumson BOE devised and implemented polices and procedures that authorized RSD staff to gather and maintain personally identifiable health-related information in a shared Google Doc spreadsheet.

191. Defendant Rumson BOE devised and implemented policies and procedures that authorized RSD staff to require specific medical interventions (RT-PCR tests) as a condition of in-school learning.

192. Defendant Rumson BOE devised and implemented policies and procedures that authorized RSD staff to compel a significant number of students to quarantine from school for significant periods of time without consent or court order.

193. Defendant Rumson BOE devised and implemented policies, procedures, and customs that exhibit deliberate indifference to the constitutional rights of Plaintiff Brink, RSD staff and students which caused the violation of Plaintiff's rights and the rights of RSD students, specifically First and Fourteenth Amendment rights.

194. The training polices of Rumson BOE were not adequate to prevent violations by its members of constitutional rights, including Plaintiff Brink's First Amendment rights and the Fourteenth Amendment rights of Plaintiff Brink and RSD students.

## COUNT NINE

### Breach of Contract - Against Defendant Rumson BOE

195.    Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 194.

196.    Plaintiff Brink alleges (1) Plaintiff entered into a contract for permanent employment with the Rumson School District starting September 25, 2020 to a date "to be determined", approved retroactively by Defendant Rumson BOE on October 28, 2020 (2) Defendant Rumson BOE breached that contract by terminating Plaintiff Brink's employment in bad faith, for unconstitutional reasons and without due process (3) Plaintiff Brink suffered mental, physical, emotional, and financial damages therefrom; (4) Plaintiff Brink performed all of her contractual obligations and was not once reprimanded for poor performance.

## COUNT TEN

### Negligent Infliction of Emotional Distress - Defendant Bormann

197.    Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 196.

198.    Plaintiff Brink alleges that Defendant Bormann caused severe emotional distress to Plaintiff Brink when Defendant (1) acted deliberately to conspire with Nurse Montanez to deprive Plaintiff of protected speech because Defendant Bormann and Nurse Montanez did not agree with Plaintiff's personal viewpoint, Defendant Bormann acted outrageously when he ignored Plaintiff's good faith, legitimate concerns about the health and wellbeing of the children in the RSD, Defendant Bormann acted maliciously and intentionally when he retaliated against Plaintiff Brink for conscientiously and respectfully challenging his medical authority, Defendant Bormann acted maliciously and

deceitfully when he made false statements as pretext for the impermissible termination of Plaintiff Brink (2) Defendant Bormann's many outrageous actions were the proximate cause of Plaintiff Brink's (3) severe distress including high anxiety, disturbed sleep, bouts of helplessness and anger, weight loss, and abdominal pain caused by the deprivation of rights, loss of wages, and loss of time and financial resources spent to vindicate the rights of school children and the rights of Plaintiff Brink.

199. Plaintiff Brink suffered significant emotional distress knowing that Plaintiff's attempts to advocate for the students and staff of the RSD were silenced and ignored.

200. Defendant Bormann should have known that treating Plaintiff Brink differently for no legitimate reason, refusing to address Plaintiff's sincere grievances, making stigmatizing, defamatory statements in conjunction with a retaliatory termination of employment, and the resulting loss of wages, would cause the Plaintiff severe emotional distress.

## COUNT ELEVEN

### Gross Negligence - Against Defendant Bormann

201. Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 200.

202. Plaintiff Brink alleges that Defendant Bormann was grossly negligent in his duties as Superintendent and Chief Administrative Officer of the Rumson School District.

203. Defendant Bormann failed to address Plaintiff Brink's factually supported concerns and relevant questions regarding the harmful and unequal treatment of school children.

204. Defendant Bormann's actions created unreasonable risk to the children of the RSD and deprived Plaintiff Brink of her constitutionally protected rights.

205. Defendant Bormann was aware of Plaintiff Brink's documented concerns for eighteen (18) days and willfully failed to act.

206. Instead of addressing Plaintiff Brink's legitimate concerns, Plaintiff Bormann terminated Plaintiff Brink's employment, fabricating reasons for his action.

207. Plaintiff Brink's concerns related to the health and welfare of RSD staff and school children, the very people Defendant Bormann is charged with protecting.

208. Defendant Bormann should have known that his actions resulted in harm to children in the RSD.

209. Defendant Bormann should have known that his actions resulted in harm to Plaintiff Brink.

210. Defendant Bormann should have known that policies, protocols and guidelines he implemented exceeded his authority and that of the Rumson BOE.

211. Defendant Bormann should have known that his actions were in contravention to the Constitution of the United States, New Jersey State law and RSD policy.

## COUNT TWELVE

### Negligence - Against Defendant Rumson BOE

212. Plaintiff Brink repeats and realleges as if fully set forth herein, the allegations contained in paragraphs numbered 1 through 211.

213. Defendant Rumson BOE failed to exercise the degree of care necessary to protect staff and students of the RSD from violations of clearly established law, including violations of the First and Fourteenth Amendments.

214.  Defendant Rumson BOE devised and implemented policies, protocols, and guidelines in ways that exceed it's power and authority.

215.  Rumson BOE failed to appropriately evaluate it's policies and their implementation which resulted in violations of clearly established law, harm and injury, including deprivation of rights and unequal treatment.

216.  Rumson BOE should have known that policies, protocols and guidelines were being implemented in ways that exceeded the Board of Education's authority.

217.  Rumson BOE should have known that policies, protocols and guidelines were being implemented in ways that injured Plaintiff Brink, staff, and students of the RSD.

WHEREFORE, the Plaintiff, Jessica M. Brink, moves this Honorable Court to enter an Order of Final Judgement against Defendants and respectfully moves this Honorable Court to:

a.  Declare Defendants' conduct unconstitutional;

b.  Declare that Defendants' acts as alleged above, violate First and Fourteenth Amendments to the Constitution of the United States;

c.  Grant a permanent injunction enjoining Defendants and all persons in active concert or participation with them from engaging in any conduct deemed unlawful or retaliatory in nature as heretofore described;

d.  Declare that Defendant Bormann is not lawfully authorized to exclude students from the school facility absent a properly obtained quarantine order;

e.  Order Defendants to adopt and implement policies, training, accountability systems, practices, and safeguards to remedy the constitutional and statutory violations described herein;

f.  Order Defendants to adopt and implement a policy that affords students/parents/ guardians basic due process before excluding a student from school for an extended period of time;

g.  Order Defendants to hire an independent contractor to evaluate the implementation, impact, appropriateness, and effectiveness of procedures enacted during the COVID-19 Pandemic;

h.  Order Defendants to pay compensatory damages for all economic losses and expenses incurred by the Plaintiff as a result of the Defendants' misconduct;

i.  Order Defendants to pay general damages for all physical pain, mental suffering, and emotional distress suffered by the Plaintiff;

j.  Order Defendants to pay punitive damages to the fullest extent permitted by law;

k.  Order Defendants to pay pre-judgement and post-judgement interest;

l.  Order Defendants to pay costs incurred in this action and reasonable attorney fees under 42 U.S.C. § 1988, and any other provision of law;

m.  Grant such other further specific and general relief as may become apparent from discovery as this matter matures for trial.

**JURY TRIAL DEMAND**

**Plaintiff demands a jury trial, pursuant to the Seventh Amendment of the**

**Constitution of the United States, as to all claims for damages.**

Dated this 26th day of January, 2023

Respectfully submitted,

*Pro se*
8 Gordon Court
Port Monmouth, NJ 07758
(732) 492-4690
jessb11@me.com

**VERIFICATION**

STATE OF ALABAMA

COUNTY OF DEKALB

BEFORE ME personally appeared Jessica M. Brink who, being by me first duly sworn and

identified in accordance with Alabama law, deposes and says:

    1.     My name is Jessica M. Brink, Plaintiff herein.

    2.     I have read and understood the attached foregoing complaint, and each fact

            alleged therein is true and correct of my own personal knowledge.

FURTHER THE AFFIANT SAYETH NAUGHT.

                                             Jessica M. Brink, Affiant

SWORN TO and subscribed before me this 26th day of January, 2023.

NOTARY PUBLIC

My Commission expires:    **My Commission Expires
March 15, 2023**

39