**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JESSICA M. BRINK**, | |
| Plaintiff, | Civil Action No. 3:23-cv-00497 (ZNQ) (DEA) |
| v. | **OPINION** |
| **JOHN BORMANN** *et al.*, | |
| Defendants. | |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion for Default Judgment filed by *pro se* Plaintiff Jessica M. Brink ("Plaintiff") (ECF No. 11), and upon the Cross-Motions of Defendants John Bormann, Maria Montanez, and Board of Education of Rumson (together "Defendants") to vacate default (ECF No. 13), and to dismiss Plaintiff's Complaint (ECF No. 12).  Plaintiff opposed the Motion to Dismiss (ECF No. 13). The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Default will be DENIED, Defendants' Motion to Vacate Default will be GRANTED and Defendants' Motion to Dismiss will be GRANTED.

I.      **BACKGROUND**[1]

In September 2020, to assist with the novel coronavirus ("COVID-19") pandemic, Plaintiff was hired as a School Nurse Permanent Substitute in the Rumson School District ("School District") by Defendant Board of Education of the School District ("Board of Education"). ("Compl." ¶¶ 11–14, ECF No. 1; *id.* at Ex. 1, ECF No. 1-1.)[2] An employment contract dated October 1, 2020, provided that Plaintiff would work "beginning on September 25, 2020 to a date to be determined, hired and paid through ESS at the rate of $200/day." (*Id.* at Ex. 1.) Plaintiff worked within the School District as a supplement to two Certified School Nurses, including Defendant Montanez. (*Id.* ¶ 25.)

In December 2020, Defendant Bormann, the Superintendent of the School District, received an email from the Monmouth County Health Department ("Health Department") notifying him that school nurses were to be one of the first groups to receive COVID-19 vaccinations. (*Id.* at Ex. 3, ECF No. 1-4.) Bormann later emailed Plaintiff to inform her that he provided her name and contact information to the Health Department "to get you on the [vaccination] list in the event that you will be getting the [COVID-19] vaccine." (*Id.* ¶ 33; *id.* at Ex. 3.) In response, Plaintiff informed Bormann that she would not be getting the vaccine for personal reasons and offered, in her capacity as a Patient Advocate, to share her reasoning for her decision. (*Id.* ¶ 35; *id.* at Ex. 3.) Bormann replied to Plaintiff's email that this was "[n]ot a problem" and that he "just wanted to offer you the same

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Counterclaim as true and draws all inferences in the light most favorable to the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Merchs. Mut. Ins. Co. v. 215 14th Str., LLC*, No. 19-9206, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[2] In October, Plaintiff's hiring was retroactively approved by the Board of Education. (Compl., Ex. 2, ECF No. 1-2.)

opportunity as all our nurses. At this time I do not for[e]see any associated requirements related to the vaccine." (*Id.* ¶ 36; *id.* at Ex. 3.)

In December 2020 and January 2021, Montanez emailed staff members at a school within the School District to provide COVID-19 vaccine-related information. (*Id.* ¶ 38.) Bormann also shared weekly vaccine-related emails with School District staff, including, *inter alia*, a survey to "expedite [staff members'] access to the COVID-19 vaccine." (*Id.* ¶ 39; *id.* at Ex. 6, ECF No. 1-7.)

On January 7, 2021, Plaintiff sent Bormann an email with the subject line: "A resource" in which Plaintiff requested Bormann's "permission to email the [School District] staff and offer [her]self as a resource" for any questions about the COVID-19 vaccination. (*Id.* at Ex. 8, ECF No. 1-9.) In the email, Plaintiff states that she is "technically not an employee of [the School District]" and that she wants to "ensure that everyone has a complete an informed consent as possible." (*Id.*) She also includes a draft copy of the email she intended to send to all School District staff. (*Id.*)

A day later, on January 8, 2021, Bormann forwarded Plaintiff's email to Montanez to ask her what she thought about Plaintiff's request. (*Id.* at Ex. 10, ECF No. 1-11.) Montanez replied that "[she felt] uncomfortable with having a permanent sub nurse do this as [she is] not sure what information will be relayed." (*Id.*) Further, Montanez said that "we would not provide a permanent sub[stitute] teacher to become the resource over our own full time staff." (*Id.*) Instead, Montanez states that "providing the informational links like [Bormann has] been doing allows staff to read, digest and make their own decisions.  Staff can forward any questions to their health care provider." (*Id.*) On January 9, 2021, Bormann responded to Plaintiff's email to state the following:

> After much thought, it would not be appropriate to provide advocacy one way or another.  It is our role as a public entity to provide only the factual information available from government institutions we are required to follow and the teachers and families to seek guidance from their own physicians if they have questions.  I would not want anyone involved with the school to serve in that capacity as it would put the [D]istrict in jeopardy if one followed the advice and it had a negative impact.

(*Id.*)

Plaintiff replied that she appreciated Bormann's thoughtful response and understood his reasoning. (*Id.*) Further, she stated that "[i]n the rush to get people vaccinated, I believe people aren't truly getting complete information and that, in itself, creates a liability." (*Id.*)

On January 12, 2021, Plaintiff initiated a discussion with Bormann, Montanez, and a school principal to discuss questions she had regarding the discrepancy in the recommended quarantine period between federal and state guidelines (14 days) and the School District's quarantine recommendations (10 days). (*Id.* ¶¶ 60–65.) After the discussion failed to provide Plaintiff the clarity she sought (*id.* ¶ 66), Plaintiff sent an email with the subject line: "Requesting some clarity" to Bormann, Montanez, two school principals, and another School District nurse. (*Id.* at Ex. 12, ECF No. 1-13.)[3] Plaintiff sent the email in order to "state her grievance regarding discrepancies in interpretation and implementation of official guidance and [School District] Policies and Protocols." (*Id.* ¶ 70.) In her email, Plaintiff states that "I'm throwing my interpretation of the following [state quarantine guideline] into the ring, because it relates to the confusion we had this morning.  I'm genuinely not trying to make this difficult.  It's a very confusing thing for which consistency is paramount." (*Id.* at Ex. 12.) Further, Plaintiff explains that she is working on a flow chart to make decisions about the quarantine period easier and more consistent.  In response to Plaintiff's email, Borman replied "[p]ut your flow chart together and we will go from there." (*Id.*)

On February 1, 2021, Plaintiff and Defendant had a phone call to discuss the concerns Plaintiff stated in her email regarding COVID-19 policies and procedures. (*Id.* ¶¶ 76–77; *id.* at Ex. 14, ECF No. 1-15.) During this phone call, Plaintiff asked Bormann to share with her the written law,

---

[3] Plaintiff characterizes this email as a petition of grievances based upon the Board of Education's policy titled SUPPORT STAFF MEMBERS 4340 GRIEVANCE. (Compl. ¶ 68.) Plaintiff contends that she could not identify a clear grievance policy for someone in her position, *i.e.*, permanent non-tenured staff, without a labor union-negotiated agreement. (*Id.* ¶¶ 67–68.)

policy, or guidance that authorized the School District to, *inter alia*, compel children to quarantine without court order and inconsistently apply quarantine guidance. (*Id.* ¶ 83.) Further, she explained that she "was uncomfortable doing things that were not found in official policy or guidance" and that "while quarantining is recommended, it is voluntary and [she] cannot compel anyone to do so." (*Id.* at Ex. 18, ECF No. 1-19.) In response, Bormann told Plaintiff that she "was clearly not comfortable with the expectations of the job and that it would probably be best if she did not continue her role in the [School District]." (*Id.* ¶¶ 85–86.) He stated that Plaintiff "was free to work for ESS in other districts, but she was no longer welcome in [this district], and that he would email ESS about the termination." (*Id.* ¶ 89.)[4]

After the meeting with Bormann, Plaintiff drafted a letter and transmitted it through email to the Board of Education and Bormann, discussing "[her] perspective on the circumstances which led to the end of [her] employment." (*Id.* ¶ 99; *id.* at Ex. 18.)[5] In response to Plaintiff's letter, Bormann sent a reply email that stated the following:

> As you can extract from reading this letter, this sub[stitute] nurse was questioning and indicating she would not follow district protocols. As per our contract with ESS we have the right to request a sub[stitute] not be assigned to our schools. She is not an employee of the [D]istrict and can retain her employment with ESS. They have been notified and confirmed as has been done with other sub[stitute]s in the past.
>
> Please know that this was the culmination of other concerns growing with this substitute nurse, including her request to send anti-vaccination guidance to our staff and conversations that have made both our school nurses uncomfortable.

---

[4] In an email in response to an inquiry from ESS, Bormann stated that the reason for Plaintiff's termination from the School District was "[Plaintiff] was found not to be a good fit." (*Id.* ¶ 109; *id.* at Ex. 21, ECF No. 1-22.)

[5] Plaintiff did not receive any response to her letter from any member of the Board of Education. (*Id.* ¶ 104.)

(*Id.* at Ex. 19, ECF No. 1-20.)[6]

On January 26, 2023, Plaintiff filed the instant Complaint asserting twelve claims against Defendants.  The Complaint asserts the following seven federal causes of action pursuant to 42 U.S.C. § 1983: (1) First Amendment free speech claim against Bormann (Count Two); (2) First Amendment right to petition claim against Bormann (Count Three); (3) First Amendment retaliation claim against Bormann (Count Four); (4) Fourteenth Amendment equal protection claim against Bormann (Count Five); (5) Fourteenth Amendment due process claim based on liberty interest against the Board of Education (Count Six); (6) Fourteenth Amendment due process claim based on property interest against the Board of Education (Count Seven); and (7) *Monell* claim against the Board of Education (Count Eight). (ECF No. 1.) The Complaint also brings a conspiracy claim under 42 U.S.C. § 1985(3) against Defendants Bormann and Montanez (together, "Individual Defendants") (Count One). Finally, the Complaint brings the following four state law claims: (1) breach of contract (Count Nine), (2) negligent infliction of emotional distress (Count Ten), (3) gross negligence (Count Eleven), and (4) negligence (Count Twelve).

Defendants Board of Education and Bormann were both served on March 14, 2023 (ECF Nos. 6, 7.) Defendant Montanez was served on March 23, 2023. (ECF No. 8.) On May 12, 2023, a notice of appearance by Defendants' counsel was filed on behalf of all Defendants. (ECF No. 9.) Upon motion by Plaintiff (ECF No. 10), on May 15, 2023, the Clerk entered default against Defendants for failure to plead or otherwise defend.  That same day, Plaintiff also moved for default judgment against all Defendants.  On May 18, 2023, Defendants moved to vacate the default judgment (ECF No. 13) and to dismiss the Complaint (ECF No. 12).

---

[6] Plaintiff obtained a copy of this post-termination email correspondence through a request for records under New Jersey's Open Public Records Act, N.J.S.A §§ 47:1A-1 *et seq*. (*Id.* ¶¶ 105–06.)

II.     **JURISDICTION**

This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

III.    **LEGAL STANDARD**

 **A.**   **Setting Aside Default**

The Clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). "A judgment setting aside the entry of default is within a district court's discretion . . . ." *Doe v. Hesketh*, 828 F.3d 159, 174 (3d Cir. 2016) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984)). "The court may set aside an entry of default for good cause. . . ." Fed. R. Civ. P. 55(c). "In exercising that discretion and determining whether 'good cause' exists, [the Third Circuit has] instructed district courts to consider the following factors: '(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct.'" *Hesketh*, 828 F.3d. at 175 (quoting *$55,518.05 in U.S. Currency*, 728 F.2d at 195) (second alteration in original).  Delay rarely is ever sufficiently prejudicial to prevent vacating default. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982). "To show a meritorious defense, a plaintiff must assert defenses that would constitute a complete defense to the action." *World Ent. Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012).  And "the standard for 'culpable conduct' in this Circuit is the 'willfulness' or 'bad faith' of a non-responding defendant," including "acts intentionally designed to avoid compliance with court notices"—it must be more than "mere negligence." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182–83 (3d Cir. 1984).

 **B.**   **Rule 12(b)(6)**

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).   Second, the court must review "the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the defendant unlawfully harmed me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).   A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678) (citation omitted).

It is well established that a "[*pro se*] complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (demonstrating the point that a pro se plaintiff's pleading must be liberally construed and is held to a lesser standard than that which is applied to pleadings drafted by attorneys).   However, "[e]ven a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013). "In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account." *Halstead v.*

8

*Motorcycle Safety Found., Inc.*, 71 F. Supp. 2d 455, 464, 467 (E.D. Pa. 1999) (citing *Chester Cnty. Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990)).

## IV.   DISCUSSION

### A.   MOTION TO VACATE DEFAULT JUDGMENT

As stated above, in determining whether good cause exists to set aside an entry of default judgment, courts consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Hesketh*, 828 F.3d at 175. Here, the Court finds that all three factors weigh in favor of finding good cause to vacate the Clerk's entry of default entered against the Defendants.

First, the Court considers whether Plaintiff will suffer prejudice if the Motion to Vacate Default is granted. "Prejudice arises where the setting aside of the entry of default results in the loss of relevant evidence or some other occurrence that tends to impair the plaintiff's ability to pursue its claims." *N.J. Chinese Cmty. Ctr. v. McAleer*, No. 21-08320, 2022 U.S. Dist. LEXIS 145256, at *13 (D.N.J. Aug. 15, 2022) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Defendants argue that Plaintiff will not suffer any prejudice because there has been no significant delay in the litigation resulting from the default, as Defendants have filed a motion to dismiss the Complaint along with the instant motion. Plaintiff, on the other hand, makes no argument as to how setting aside the default would prejudice her. In any case, "the inconvenience and expense to a plaintiff of having to litigate on the merits do not rise to the level of prejudice required." *Julaj v. Tau Assocs. LLC*, No. 12-1464, 2013 WL 4731751, at *4 (D.N.J. 2013). Accordingly, the Court finds that this factor weighs in favor of vacating default.

Next, the Court considers whether Defendants have raised a meritorious defense. Where "at least one meritorious defense" has been specifically alleged, default judgment may be inappropriate. *Feliciano*, 691 F.2d at 657. Here, Defendants set forth multiple meritorious defenses under Rule

12(b)(6) to each of Plaintiff's claims in their Motion to Dismiss Plaintiff's Complaint. (*See generally* "Defs.' Mot. to Dismiss", ECF No. 12-1.) Defendants are not required to prove their case at this moment, but only "set forth with some specificity the grounds for [their] defense." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988); *see also Hritz*, 732 F.2d at 1181 (stating that "a meritorious defense is presumptively established when the allegations of defendant's answer, if established on trial would constitute a complete defense to the action.") (internal quotations and citations omitted)). As a result, the Court finds that this factor also weighs in favor of setting aside default.

Finally, the Court considers whether the default was a result of Defendants' culpable conduct. To find "culpable conduct" on the part of a non-responding defendant requires evidence of "willfulness" or "bad faith." *Hritz*, 732 F.2d at 1182. Here, Defendants responded, albeit delayed, with the instant cross-motion and motion to dismiss. Further, in their briefing, Defendants assert that the delay was because the Board of Education, as a public entity, needed to submit the case to its insurance provider to obtain legal representation. ("Defs.' Mot. to Vacate" 4–5, ECF No. 13-1.) The Court finds that failure to respond, on this basis, does not rise to "willfulness" or "bad faith." *Hritz*, 732 F.2d at 1182. In sum, the Court finds that all three factors weigh in favor of denying Plaintiff's motion for default judgment against Defendants and granting Defendants' cross-motion to vacate default judgment.

### B.    MOTION TO DISMISS THE COMPLAINT

Defendants also move to dismiss each of Plaintiff's twelve claims under Rule 12(b)(6). (*See generally* Defs.' Mot. to Dismiss.) The Court examines each claim in turn.

### 1.    Conspiracy Claim under § 1985 (Count One)

The Complaint first asserts a § 1985(3) claim against the Individual Defendants for conspiracy to violate Plaintiff's constitutional rights. (Compl. ¶¶ 126–131 (Count One).) Namely, in

Count One, Plaintiff alleges that "Bormann conspired with [Montanez] . . . for the purpose of depriving Plaintiff Brink . . . of equal privileges under the First Amendment." (*Id.* ¶ 127.)

"Section 1985(3) provides a cause of action if: (1) two or more persons conspire to deprive any person of the equal protection of the law; (2) one or more of the conspirators performs or causes to be performed any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or his property or deprives the plaintiff of any right or privilege of a citizen of the United States." *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). "[C]laims under Section 1985 must be pled with specificity in order to withstand a motion to dismiss. Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted." *Handelman v. New Jersey*, No. 16-2325, 2016 WL 3691976, at *11 (D.N.J. July 12, 2016) (quoting *Martin v. Delaware Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1297 (D. Del. 1985)). Moreover, it is well-settled that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102.

Here, the Complaint fails to state a claim for conspiracy under § 1985(3). First, Plaintiff does not allege any facts in support of the existence of a conspiracy. Specifically, nothing in the Complaint suggests an agreement or concerted action amongst the Individual Defendants. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a 'meeting of the minds.'") (citations omitted); *Aulisio v. Chiampi*, 765 F. App'x 760, 764 (3d Cir. 2019) (dismissing conspiracy claim under § 1985 against state prison officials because inmate-prisoner "offered nothing more than conclusory statements that [d]efendants conspired to deprive him of his constitutional rights; no evidence suggests that they agreed, plotted, or even discussed doing so"). The Complaint merely states conclusively, that "Defendant Bormann conspired with

Defendant Nurse Montanez" to violate Plaintiff's First Amendment rights. (Compl. ¶ 127.) The only supporting allegation for the alleged conspiracy in the Complaint is the email between Bormann and Montanez discussing Plaintiff's email requesting to offer herself "as a resource to the staff regarding the COVID-19 vaccine roll-out." (*Id.* ¶ 40; *id.* at Ex. 8, .) This email, however, is insufficient on its own to support the inference of any agreement or understanding between Bormann and Montanez to "restrain Plaintiff['s] protected speech regarding COVID-19 vaccination." (*Id.* ¶ 53.) Therefore, Plaintiff has not pled a conspiracy with specificity because she "fails to allege any agreement or understanding among or between any of the defendants to plot, plan or conspire to violate h[er] constitutional rights." *Gay v. City of Philadelphia*, No. 03-5358, 2005 WL 1844407, at *7 (E.D. Pa. Aug. 2, 2005).

Further, the Complaint does not allege that the Individual Defendants were motivated by invidious discriminatory class-based animus.  Instead, Plaintiff alleges that the "invidious animus . . . was falsely predicated on Plaintiff's purported political view and 'request to send anti-vaccination guidance.'" (Compl. ¶ 130.) Nowhere in the Complaint does Plaintiff allege any class- or race-based discriminatory animus, as is required for a viable § 1985(3) claim. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) ("[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious."); *see also Grant v. Slattery*, Civ. No. 22-941, 2022 U.S. Dist. LEXIS 177234, at *21 (D.N.J. Sept. 29, 2022) ("Plaintiff cannot demonstrate that the alleged conspiracy by Defendants was motivated by racial or discriminatory animus against an identifiable protected class, since Plaintiff fails to allege that he is part of an identifiable class that requires constitutional protection.").

Accordingly, Plaintiff's § 1985 conspiracy claims against the Individual Defendants will be dismissed without prejudice.

### 2.     First Amendment Claims under § 1983 (Counts Two, Three, and Four)

Next, the Court considers Plaintiff's First Amendment claims under § 1983 against Bormann. (Compl. ¶¶ 132–37 (Count Two).)

Section 1983 allows an individual to sue a "person" who, acting "under color of any statute [or] ordinance … of any State," violates that individual's Constitutional rights. 42 U.S.C. § 1983; *Callan v. Ocean Cnty. Dep't of Corr.*, Civ. No. 21-08450, 2022 WL 901528, at *4 (D.N.J. Mar. 28, 2022). To state a cognizable claim under § 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips*, 515 F.3d at 235 (citing *Kneipp v. Teder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).  A plaintiff is required to plead two elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privilege secured by the Constitution or the laws of the United States"; and (2) that the plaintiff was deprived of her rights by a person acting under the color of state law. *Williams v. Borough of W. Chester*, 891 F.2d 458, 464 (3d Cir. 1989); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983, does not, by itself, confer any substantive rights.  It only serves to enforce rights granted under the Constitution or federal law. *Mayer v. Gottheiner,* 382 F. Supp. 2d 635, 646–47 (D.N.J. 2005). Thus, the specific constitutional right alleged establishes what the controlling substantive law will be. *Ingliema v. Town of Hampton*, Civ. No. 05-3497, 2007 WL 980414, at *2 (D.N.J. Mar. 28, 2007).

Counts Two through Four of the Complaint are predicated on alleged First Amendment violations based upon Plaintiff's right to free speech and right to petition the government to redress grievances.  The First Amendment states as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

Defendant argues that each of Plaintiff's First Amendment claims should be dismissed because Plaintiff fails to assert that she was deprived of any right protected by the First Amendment. The Court agrees.

### a)    Restraint of First Amendment Free Speech (Count Two)

An employee suing her government employer under the First Amendment's Speech Clause must show that "she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011) ("If an employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum....") "When employees 'make statements pursuant to their official duties,' they are not 'speaking as citizens for First Amendment purposes,' such that the speech is not of public concern and the First Amendment does not prohibit as retaliatory subsequent employer discipline." *D & D Assocs. v. Bd. of Educ.*, No. 03-1026, 2012 U.S. Dist. LEXIS 44887, at *61 (D.N.J. Mar. 30, 2012) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). "Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146–148 (1983)).

Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. *Guarnieri*, 564 U.S. at 386. "The First Amendment right of a public employee or an independent contractor … is to be weighed against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its

employees.'" [7] *D & D Assocs.*, 2012 U.S. Dist. LEXIS 44887, at *61 (quoting *Guarnieri*, 564 U.S. at 386); *see also Garvey v. Barnegat Bd. of Educ.*, No. 07-6134, 2008 U.S. Dist. LEXIS 57603, at *14 (D.N.J. July 21, 2008) ("A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.") (quoting *Garcetti*, 547 U.S. at 418.)

In Count Two, Plaintiff alleges that Bormann restrained Plaintiff's right to free speech under the First Amendment for no rational or legitimate reason when Bormann declined to allow Plaintiff to send an email to School District staff members to offer herself as a resource for any COVID-19 vaccination questions. (Compl. ¶¶ 52–54.) Plaintiff's proposed speech would have been sent to all School District staff members through the School District's internal email listserv for staff called "AllDistrictStaff@rumsonschool.org". (*See, e.g.*, *id.* At Ex. 6.)

Here, the Court finds that Plaintiff fails to allege that her request to send an email communication to staff members was a matter of public concern.  Instead, Bormann denied Plaintiff's purely personal request as to whether she could offer herself as a resource to answer any questions about the COVID-19 vaccination through the School District's email listserv.  Such speech is not protected under the First Amendment.  Furthermore, even if such speech was protected, because Plaintiff sought to use the School District's email listserv as a forum, Bormann "may impose restrictions on speech that are reasonable and viewpoint-neutral." *Miller v. Goggin*, 2023 U.S. Dist. LEXIS 78620, at *28 (E.D. Pa. May 5, 2023) (quoting *Christian Legal Soc. Chapter of the Univ. of California, Hastings College of the Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010)). Bormann's reasoning for imposing his restriction was both reasonable and viewpoint-neutral (*See, e.g.*, Compl.

---

[7] "For First Amendment protection purposes, independent contractors are treated the same as public employees." *D & D Assocs.*, 2012 U.S. Dist. LEXIS 44887, at *61 (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996)).

at Ex. 10 (stating that "it would not be appropriate to provide advocacy one way or another" and that "our role as a public entity [is] to provide only the factual information available".))

Accordingly, because Plaintiff has not plead that the alleged restraint applied to speech protected by the First Amendment, Defendants' Motion to Dismiss Plaintiff's restraint of speech claim will be granted and Count Two will be dismissed without prejudice.

### b)      First Amendment Retaliation (Count Four)

Similar to Plaintiff's First Amendment restraint of speech claim, Plaintiff's First Amendment retaliation claim in Count Four cannot be sustained because the Complaint has failed to sufficiently plead that Plaintiff engaged in a protected activity. (Compl. ¶¶ 148–57 (Count Four).)

To assert a retaliation claim under § 1983 predicated on the First Amendment, a plaintiff must show (1) that she engaged in a protected activity, (2) that the defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2012) (citations omitted). "[T]he 'critical question' for determining whether a public employee's speech is protected under the First Amendment 'is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Pasqua v. Cnty. of Hunterdon*, 721 F. App'x 215, 221 (3d Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 239 (2014)).

In Count Four, Plaintiff alleges that the protected activity that she claims led Bormann to retaliate against her was engaging in "protected speech and petition[ing] her government on issues relating to matters of public concern." (Compl. ¶ 149.) In response to Plaintiff's protected activity, Plaintiff alleges that Bormann retaliated against her by terminating her employment. (*Id.*)

As alleged, and even when construing the Complaint in the light most favorable to Plaintiff, Plaintiff's speech here is within the scope of her duties as a nurse and thus, was not made as private

citizen on a matter of public concern.  Instead, Plaintiff's speech was made in her capacity as a school nurse to discuss questions she had regarding the application of COVID-19 policies and procedures in the School District.  She sought clarity regarding the COVID-19 protocols as it applied to her responsibilities as a nurse. (*See, e.g.*, Compl. ¶ 87 ("[O]ne of the major things Plaintiff Brink needed to do her job effectively and in accordance with a nurse's scope of practice and license, is written, valid, policy and procedure."; *id.* at Ex. 12 ("[A]s one of the medical professionals here, I need to have a firm understanding from a medical safety standpoint and from a liability standpoint."); *id.* at Ex. 18 ("I explained [to Bormann] that I was uncomfortable doing things that were not found in official policy or guidance.").) Such speech is thus not of public concern and is not entitled to First Amendment protection for subsequent retaliatory action.  Therefore, Plaintiff has not sufficiently pled a plausible First Amendment retaliation claim and Count Four for failure to state a claim will be dismissed without prejudice.

### c)     First Amendment Right to Petition (Count Three)

Next, Count Three asserts a claim under § 1983 against Bormann for deprivation of her First Amendment right to petition. (Compl. ¶¶ 138–47 (Count Three).)

It is well-established that the First Amendment protects the right to file grievances. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). "The right to petition the government is 'one of the most precious of the liberties safeguarded by the Bill of Rights.'" *Mirabella v. Villard*, 853 F.3d 641, 653 (3d Cir. 2017) (quoting *BE & K Constr. Co v. NLRB*, 536 U.S. 516, 524 (2002)).  A petition may take multiple forms and may be directed towards any department of a local, state, or the national government.  Further, "[t]he right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Id.* at 654.  But critically, there is no corresponding requirement that a governmental unit must respond to a petition. *See Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979) ("But the First Amendment does not

17

impose any affirmative obligation on the government to listen, [or] to respond[.]"); *Newton v. Greenwich Twp.*, No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) ("[W]hile there is a constitutional right to petition the government for redress of grievances, there is no constitutional right to have the government respond to that petition.") (emphasis omitted).

Plaintiff's First Amendment claim in Count Three arises from Bormann's failure to respond to her alleged petition of grievances.  According to the Complaint, Plaintiff submitted her grievances to Bormann regarding implementation of COVID-19-related policies and procedures in an email dated January 13, 2021. (Compl. ¶ 70, Ex. 12.) Subsequently, because Plaintiff's grievances had not been addressed (*id.* ¶ 74), Plaintiff also expressed these grievances to Bormann orally over the phone on February 1, 2021 (*id.* ¶ 77). Bormann did not address any of Plaintiff's grievances, nor did he forward them to the Board of Education for consideration. (*See id.* ¶¶ 102, 114, 119.) Critically, however, the Complaint does not allege that Bormann prohibited or limited Plaintiff's right to communicate with him or the Board of Education.  Although Plaintiff was unsatisfied with Bormann's lack of response to her grievances, Bormann's failure to respond "does not amount to a violation of [Plaintiff's] right to petition." *B.L. v. Fetherman*, No. 22-3471, 2023 U.S. Dist. LEXIS 68306, at *18-19 (D.N.J. Apr. 18, 2023); *see also Williams v. Del. Cty. Bd. of Prison Inspectors*, No. 17-4348, 2018 U.S. Dist. LEXIS 161342, at *34 (D.N.J. Sept. 20, 2018) ("[Plaintiff] does not have a constitutional right to have his grievances addressed.").  Accordingly, the Defendants' motion with respect to Plaintiff's First Amendment right to petition claim will be granted and Count Three will be dismissed without prejudice.

### 3.   Fourteenth Amendment Equal Protection Claim under § 1983 (Count Five)

The Complaint alleges a § 1983 claim against Bormann for violation of Plaintiff's equal protection rights under the Fourteenth Amendment. (Compl. ¶¶ 158–65 (Count Five).) Plaintiff

alleges that Bormann violated Plaintiff's Fourteenth Amendment Equal Protection rights by treating Plaintiff differently than Montanez, a similarly-situated nurse. (*Id.* ¶ 159.) Specifically, Plaintiff alleges that Bormann allowed Montanez to share information on the COVID-19 vaccine to School District staff but did not allow Plaintiff to do the same. (*Id.* ¶¶ 159, 163.)

The Fourteenth Amendment states that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "In order to establish a § 1983 equal protection claim on this basis, [Plaintiff] must demonstrate that she received different treatment than other similarly situated persons and that the disparate treatment was based on her protected class status." *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013).

In this case, Plaintiff's equal protection claim fails to allege or plead sufficient facts for the Court to infer that Plaintiff's disparate treatment was based on any protected class status. Instead, Plaintiff alleges that Bormann treated Plaintiff differently than Montanez because "[Bormann] did not agree with Plaintiff['s] personal viewpoint on COVID-19 vaccination." (Compl. ¶ 159.)

In some cases, however, an equal protection claim can be sustained where a plaintiff does not allege that she is a member of a protected class, but rather "claims that [she] has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dept. of Agr.*, 553 U.S. 591, 601 (2008); *see also Phillips*, 515 F.3d at 243. To state an equal protection claim under a class of one theory, a plaintiff must show "(1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell*, 533 F.3d at 203 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Here, Plaintiff identifies Montanez as a similarly-situated individual because she was employed as a nurse in the School District by the Board of Education. Plaintiff alleges that Defendant

19

Bormann treated Plaintiff differently than Defendant Montanez in violation of the Equal Protection clause of the Fourteenth Amendment by allowing Montanez "to exercise her First Amendment right … supporting the COVID-19 vaccination" while restraining Plaintiff's protected speech under the First Amendment regarding the same topic. (Compl. ¶¶ 159, 163.)

Even assuming *arguendo* that Montanez constitutes a similarly-situated individual, Plaintiff's equal protection claim nevertheless fails to allege a non-class-based equal protection claim. Beyond conclusory statements, Plaintiff does not allege a lack of rational basis for the alleged differential treatment she received. *See Aulisio*, 765 F. App'x at 765 ("Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim."). To the contrary, the Complaint includes allegations that support an inference that Bormann had a rational basis for the alleged disparate treatment. For instance, the Complaint attaches, as an exhibit, Bormann's email in response to Plaintiff's request to offer herself as a resource for COVID-19 vaccination questions. (Compl. at Ex. 10.) In the email, Bormann clearly explains that "it would not be appropriate to provide advocacy one way or another" and that "it would put the [D]istrict in jeopardy if one followed the advice [of Plaintiff] and it had a negative impact." (*Id.*) In Plaintiff's response to Bormann's explanation, she acknowledges his "thoughtful response" and that she understood his reasoning. (*Id.*) Therefore, because Plaintiff does not allege any facts indicating that her treatment lacked rational basis, her equal protection claim against Bormann cannot succeed on a "class of one" theory. *See Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting class of one equal protection claim based on denial of certain medical equipment where inmate did "not allege facts showing … that there was no rational basis for his different treatment"). Accordingly, the Count Five will be dismissed.

### 4.       Due Process Claims under § 1983 (Counts Six and Seven)

Next, the Court turns to address Plaintiff's due process claims against the Board of Education in Count Six and Seven of the Complaint. (Compl. ¶¶ 166–71 (Count Six); *id.* ¶¶ 172–76 (Count Seven).)

To state a claim under § 1983 for a deprivation of procedural due process rights, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233–34 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

In the Complaint, Plaintiff advances two procedural due process claims.[8]   In Count Six, Plaintiff alleges a violation of due process based on stigma-plus theory, meaning a liberty interest in "her good name, reputation, honor, and integrity." (Compl. ¶¶ 166–71.) In Count Seven, Plaintiff alleges a violation of due process based on a property interest in continued employment. (*Id.* ¶¶ 172–76.) With respect to both Counts, Plaintiff contends that the Board of Education deprived her of a liberty interest and a property interest when the Board of Education condoned her termination and failed to provide procedural due process as for a permanent employee in Plaintiff's position. (*Id.* ¶¶ 167, 173.) For the reasons discussed below, the Court finds Plaintiff has failed to state a claim for procedural due process based on either a stigma-plus theory or on her continued employment.

### a)       Stigma-Plus Claim (Count Six)

To establish a claim that Plaintiff was deprived of her liberty interest in her reputation, Plaintiff must plead a "stigma-plus claim." *Kane v. Chester Cnty.*, 811 F. App'x 65, 69 (3d Cir. 2020).

---

[8] While Plaintiff does not specify whether she asserts her due process claims under either substantive due process or procedural due process, the Court construes both claims under procedural due process due to the Complaint's allegations regarding failure to provide "procedure to provide due process." (Compl. ¶¶ 167, 173.)

An individual has a protectable interest in her reputation. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 (1971). Reputation alone, however, is not an interest protected by the Due Process Clause. *See Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993) (citation omitted). Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff "must show a stigma to [her] reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236. "To satisfy the 'stigma' prong of the test the plaintiff must allege 'that the purportedly stigmatizing statement(s)' were (1) false, and (2) made publicly." *Kane*, 811 F. App'x at 69 (quoting *Hill*, 455 F.3d at 236) (citations omitted); *see also Chabal v. Reagan*, 841 F.2d 1216 (3d Cir. 1988).

Here, Plaintiff alleges that Bormann made "false claims, stigmatizing and defamatory comments" that caused Plaintiff to be "stigmatized and defamed in the eyes of her colleagues of the [School District], the [Board of Education], the staff at ESS, and her family and friends." (Compl. ¶¶ 131–132.) Bormann's alleged false statements are contained within an email dated February 1, 2021, from Bormann to the Board of Education, regarding Plaintiff's termination.  For instance, in the email, Bormann states that "[Plaintiff] was questioning and indicating she would not follow district protocols." (*Id.* at Ex. 19.) Plaintiff argues that this statement was false because she "never refused to complete an assigned task, nor was Plaintiff counseled or cited for any negative action, statement, or behavior." (*Id.* ¶ 130.)

Even assuming that Bormann's statements in his email communication were false or defamatory, Plaintiff fails to allege any public statement.  The Complaint does not allege that this email was disseminated to any members of the public and instead, Borman's email post-termination was sent to members of the Board of Education only. (*See id.* at Ex. 19.) Such an internal email communication falls far short of the type of public dissemination for which the protections of due process may be invoked. *See Chabal*, 841 F.2d at 1223–24 (government entity must disseminate

information disparaging a plaintiff's "good name, reputation, honor, or integrity" to the public in order to sustain an actionable infringement of plaintiff's liberty interest).  Therefore, the email does not provide a basis for Plaintiff's stigma-plus due process claim.

Accordingly, Plaintiff has failed to sufficiently plead a due process claim, and Defendants' motion as to Count Six will be granted.

### b)      Property Interest in Employment (Count Seven)

Plaintiff's remaining due process claim under 42 U.S.C. § 1983 also fails to state a claim because Plaintiff has not identified a protected property interest under the Fourteenth Amendment.

"In order to succeed on a claim of deprivation of due process under the Fourteenth Amendment with respect to termination of a specific employment position, a plaintiff must first establish a property interest in the employment." *Latessa v. New Jersey Racing Comm'n*, 113 F.3d 1313, 1318 (3d Cir. 1997).  "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Hill*, 455 F.3d at 234 (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005)).  "A public employee, absent a statutory or contractual entitlement to his job, has no legitimate property interest in continued employment." *Daniels v. Borough of Spring Lake Heights*, No. 07-4921, 2009 U.S. Dist. LEXIS 85520, at *12 (D.N.J. Sept. 18, 2009) (citing *Bd. Of Regents v. Roth*, 408 U.S. 564, 578 (1972)).  Similarly, an at-will employee does not have a property interest in a job and thus has no rights to procedural due process because she serves at the pleasure of her employer. *Elmore v. Cleary,* 399 F.3d 279, 282 (3d Cir. 2005); *see also Robertson v. Fiore*, 62 F.3d 596, 601 (3d Cir. 1995); *Morgan v. Union Cnty. Bd. Of Chosen Freeholders*, 268 N.J. Super. 337, 355 (App. Div. 1993). "In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine.  An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that

provides otherwise." *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 397 (1994) (internal citation omitted).  If parties to an employment agreement intend for the relationship to be something other than at-will, such intention must be "specifically stated in explicit, contractual terms." *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 (D.N.J. 2008) (internal quotation marks and citation omitted).

Here, Plaintiff alleges that she was a permanent non-tenured employee of the School District and that she "had a legitimate expectation of continued employment barring good cause for termination." (Compl. ¶¶ 16, 176.) While "New Jersey law provides that tenured teachers may be terminated for cause only," because Plaintiff was a non-tenured employee, any claim to entitlement to her job must come from the employment contract. *Goodmann v. Hasbrouck Heights Sch. Dist.*, 275 F. App'x 105, 108 (3d Cir. 2008).  The Court finds that the parties' employment contract does not create a protected property interest in Plaintiff's nurse position.  Indeed, the employment contract does not contain language that would suggest any legitimate expectation of continued employment. The terms of the employment contract governing Plaintiff's appointment state that Plaintiff's position as a School Nurse Permanent Substitute was to begin on September 25, 2020 "to a date to be determined" and that Plaintiff was hired and paid through ESS, a third-party agency. (Compl. at Ex. 1.) It also states that Plaintiff was contracted for the temporary position pursuant to N.J.S.A. 18A:16-1.1[9] and "the time served in this position does not contribute toward acquiring tenure." (*Id.*)

Based on these terms, the Court finds that the employment contracts fails to indicate any intention that Plaintiff's employment to be anything other than at will.  Thus, as an at-will employee, Plaintiff does not have any property interest in continued employment as a permanent substitute nurse with the School District. *See, e.g., Chen v. Newark Pub. Schs.*, No. 07-1618, 2009 U.S. Dist. LEXIS

---

[9] N.J.S.A. 18A:16-1.1 provides for the hiring of temporary employees "to act in place of any officer or employee during the absence, disability or disqualification of any such officer or employee." *Lammers v. Bd. of Educ.*, 134 N.J. 264, 268 (1993) (emphasis omitted).

103746, at *14 (D.N.J. Nov. 5, 2009) (dismissing a substitute teacher's due process claim under § 1983 because the teacher was an at-will employee and thus, could not establish his right in his at-will, per diem employment).

Therefore, the Defendants' motion as to Count Seven will be granted and Plaintiff's due process claim will be dismissed without prejudice.

### 5.   *Monell* Claim under § 1983 (Count Eight)

The Court next turns to Plaintiff's *Monell* claim under § 1983 against the Board of Education. (Compl. ¶¶ 177–94 (Count Eight).)

It is well settled law that a municipality may not be held liable under § 1983 for the misconduct of its employees under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).  For a government entity to be liable for unconstitutional conduct, the injury alleged must result from the execution of a government policy or custom. *Id*. at 694–95.  Such a policy or custom may be made by "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.*  Thus, a government entity can be liable for constitutional injuries only when they result from the implementation or execution of an official policy, regulation, or decision adopted by it or informally adopted by custom. *McTernan v. City of York*, 564 F.3d 636, 657–58 (3d Cir. 2009).  "This creates a 'two-track path' to municipal liability whereby a plaintiff may establish that his or her injury resulted from either an officially adopted policy or an informally adopted custom." *Henderson v. Matthews*, 565 F. Supp. 3d. 531, 534–35 (E.D. Pa. 2020) (citing *McTernan*, 564 F.3d at 657–58.)

Most critically, however, is that municipal liability under § 1983 requires an underlying constitutional violation. *See Monell*, 436 U.S. at 690–91; *Startzell*, 533 F.3d at 204 (stating that for § 1983 liability to attach to a municipality, there "must be a violation of [the plaintiff's] constitutional rights) (citation omitted).  Indeed, without a "violation in the first place, there can be no derivative

municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 245 n.15 (3d Cir. 2013); *see also Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) ("To hold the school district liable for a failure to train under Section 1983, [plaintiffs] must demonstrate that there was a constitutional violation and that the violation was caused by the School District's policy or custom.") (emphasis added) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996)). Here, the Court has already dismissed Plaintiff's First Amendment and Fourteenth Amendment claims. Thus, no constitutional violation exists as to provide a basis to make the Board of Education liable under § 1983. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury…, it is inconceivable that [the municipality] could be liable"); *see also, e.g., Hohsfield, v. Staffieri*, Civ. No. 21-19295, 2021 U.S. Dist. LEXIS 209773, at *11 (D.N.J. Nov. 1, 2021); *Brooks v. Codispoti*, Civ. No. 12-05884, 2015 U.S. Dist. LEXIS 172202, at *33 (D.N.J. Dec. 28, 2015). Thus, the Court grants Defendants' motion with respect to Plaintiff's *Monell* claim against the Board of Education. Count Eight of the Complaint is dismissed.

In sum, the Court finds that Plaintiff has failed to plead any plausible federal claim and accordingly, Counts One through Eight of the Complaint will be dismissed.

### 6. State Law Claims (Counts Nine, Ten, Eleven, and Twelve)

Finally, the Court turns to Plaintiff's remaining claims brought under state law, which the Court has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367.

Having dismissed Plaintiff's federal claims, the Court now declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts Nine through Twelve). *See* 28 U.S.C. § 1367(c)(3). As is the case here, where "the district court has dismissed all claims over which it has original jurisdiction," a district court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). "The decision to retain or decline jurisdiction over state-law claims is discretionary." *Kach*, 589 F.3d at 650. The Third Circuit Court

of Appeals has held that when determining whether to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Where courts dismiss federal claims at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *Gibbs*, 383 U.S. at 726.

Here, the Court has determined that it will dismiss all of Plaintiff's claims for which it has original jurisdiction, *i.e.*, Plaintiff's federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff may refile her state law tort claims in the appropriate state court.[10]

## V.    CONCLUSION

For the reasons stated above, Defendants' Cross-Motion to Vacate Default will be GRANTED and Plaintiff's Motion for Default Judgment will be DENIED. Defendants' Cross-Motion to Dismiss will be GRANTED. The Complaint will be DISMISSED WITHOUT PREJUDICE. Plaintiff will be given leave to amend her complaint to address the deficiencies set forth in this Opinion within 30 days. An appropriate Order will follow.


Date: **September 25, 2023**

/s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[10] Consequently, because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court need not address Defendants' remaining arguments in support of their motion to dismiss with respect to the state law claims.