**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JESSICA M. BRINK,** <br><br> Plaintiff, <br><br> v. <br><br> **JOHN BORMANN,** *et al.*, <br><br> Defendants. | Civil Action No. 23-00497 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon the Motions of Defendants John Bormann ("Bormann") and the Board of Education of Rumson ("Board of Education") (together, "Defendants") to vacate default and extend time to answer ("Mot. to Vacate Default", ECF No. 22), and to dismiss Plaintiff Jessica M. Brink's ("Plaintiff") Verified Amended Complaint ("Motion to Dismiss", ECF No. 23). Plaintiff opposed the Motion to Vacate Default ("Opp'n to MVD," ECF No. 24) and opposed the Motion to Dismiss ("Opp'n to MTD", ECF No. 26). The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Vacate Default will be **GRANTED** and Defendants' Motion to Dismiss will be **GRANTED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**[1]

In September 2020, to assist with the novel coronavirus ("COVID-19") pandemic, Plaintiff was hired as a School Nurse Permanent Substitute in the Rumson School District ("School District") by Defendant Board of Education. (Verified Amended Complaint ("VAC"), ECF No. 19 ¶¶ 110, 114.) An employment contract dated October 1, 2020 retroactively approved her hiring and provided that Plaintiff would work "beginning on September 25, 2020 to a date to be determined, hired and paid through [third-party employment contractor] ESS at the rate of $200/day." ("VAC Supp.", ECF No. 20 at Ex. 1; VAC ¶¶ 108–09.) Plaintiff worked within the School District as a supplement to two certified school nurses, including Maria Montanez ("Montanez"). (VAC ¶¶ 106, 124, 126.) Plaintiff worked part-time for the School District and part-time as a Patient Advocate. (*Id.* ¶ 114.)

In December 2020, Defendant Bormann, the Superintendent of the School District, emailed Plaintiff to inform her that he provided her name and contact information to the Health Department "to get you on the [vaccination] list in the event that you will be getting the [COVID-19] vaccine." (VAC Supp. at Ex. 2; *see also* VAC ¶ 163.) In response, Plaintiff informed Bormann that she would not be getting the vaccine for personal reasons and offered, in her capacity as a Patient Advocate, to share her reasoning for her decision. (VAC Supp. at Ex. 2.) Bormann replied to Plaintiff's email that this was "[n]ot a problem" and that he "just wanted to offer [her] the same opportunity as all our nurses." (*Id.*) He also noted that, as a school leader, he was "in no position

---

[1] For the purposes of the Motion to Dismiss, the Court accepts the factual allegations in the VAC as true and draws all inferences in the light most favorable to the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Merchs. Mut. Ins. Co. v. 215 14th Str., LLC*, Civ. No. 19-9206, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020). Further, the Court also considers any "document integral to or explicitly relied upon in the complaint[,]" including the Exhibits filed as a separate document (ECF No. 20) to the Complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts necessary to resolve the instant Motions.

to have an opinion on the matter of whether one should or should not have a vaccine.  I can only provide the opportunities and follow the guidance expected of schools." (*Id.*)

At various times including in January 2021, Montanez emailed staff members at a school within the School District to provide COVID-19 vaccine-related information. (VAC ¶ 176; VAC Supp. at Ex. 3.)  Bormann also shared regular vaccine-related emails with School District staff in December 2020 and January 2021, including, *inter alia*, a survey to "gauge the staff's interest in receiving the vaccine." (VAC ¶ 178.)

On January 7, 2021, Plaintiff sent Bormann an email with the subject line: "A resource" in which Plaintiff requested Bormann's "permission to email the [School District] staff and offer [her]self as a resource" for any questions about the COVID-19 vaccination. (VAC Supp. at Ex. 4.)  In the email, Plaintiff stated that she was "technically not an employee of [the School District]" and that she wanted to "ensure that everyone has a complete an informed consent as possible." (*Id.*)  She also included a draft copy of the email she intended to send to all School District staff, which invited staff to contact her via her personal email with any questions about the vaccine, which she would answer based on her "significant . . . research[.]" (*Id.*)

A day later, on January 8, 2021, Bormann forwarded Plaintiff's email to Montanez to ask her what she thought about Plaintiff's request. (*Id.* at Ex. 10.)  Montanez replied that "[she felt] uncomfortable with having a permanent sub nurse do this as [she is] not sure what information will be relayed." (VAC ¶ 273; VAC Supp. at Ex. 10.)  Further, Montanez said that "we would not provide [sic] a permanent sub . . . to become the resource over our own full time staff." (VAC Supp. at Ex. 10.)  Instead, Montanez stated that "providing the informational links like [Bormann had] been doing allows staff to read, digest and make their own decisions.  Staff can forward any questions to their health care provider." (*Id.*)  Bormann responded that he would let Plaintiff know

3

that "it is not our role to provide any advocacy one way or another, but to just share the factual information for them to consider with their own physician." (*Id.*) On January 9, 2021, Bormann responded to Plaintiff's email to state the following:

> [I]t would not be appropriate to provide advocacy one way or another. It is our role as a public entity to provide only the factual information available from government institutions . . . .

(VAC ¶ 274.)

On January 13, 2021, Plaintiff initiated a discussion with Bormann, Montanez, and a school principal to discuss questions she had regarding the discrepancy in the recommended quarantine period between federal and state guidelines (14 days) and the School District's quarantine recommendations (10 days). (VAC Supp. at Ex. 7.) The same day, Plaintiff sent an email with the subject line: "Requesting some clarity" to Bormann, Montanez, two school principals, and another School District nurse. (*Id.* at Ex. 5.) In her email, Plaintiff stated that "I'm throwing my interpretation of the following [state quarantine guideline] into the ring, because it relates to the confusion we had this morning. I'm genuinely not trying to make this difficult. It's a very confusing thing for which consistency is paramount." (*Id.*) Further, Plaintiff explained that she was working on a flow chart to make decisions about the quarantine period easier and more consistent. (*Id.*) In response to Plaintiff's email, Borman replied "[p]ut your flow chart together and we will go from there." (*Id.*)

On February 1, 2021, Plaintiff and Defendant had a phone call to discuss the concerns Plaintiff stated in her email regarding COVID-19 policies and procedures. (VAC ¶¶ 224–25; VAC Supp. at Ex. 7.) During this phone call, Plaintiff asked Bormann to share with her the written law, policy, or guidance that authorized the School District to, *inter alia*, compel children to quarantine without court order and inconsistently apply quarantine guidance. (*Id.* ¶¶ 226–230; VAC Supp. at

Ex. 7.) Further, she explained that she "was uncomfortable doing things that were not found in official policy or guidance" and that "while quarantining is recommended, it is voluntary and [she] cannot compel anyone to do so." (VAC Supp. at Ex. 7.) In response, Bormann told Plaintiff that she was clearly "not comfortable with the expectations of the job and that it would probably be best if [she] did not continue [her] role with the [School District]." (*Id*.) He stated she was "free to work for ESS in other districts and that [he would] email ESS about [her] termination." (*Id*.)[2]

After the meeting with Bormann, Plaintiff drafted a letter and transmitted it through email to the Board of Education and Bormann, discussing "[her] perspective on the circumstances which led to the end of [her] employment." (*Id*.) In response to Plaintiff's letter, Bormann sent a reply email that stated the following:

> As you can extract from reading this letter, this sub nurse was questioning and indicating she would not follow district protocols. As per our contract with ESS we have the right to request a sub not be assigned to our schools. She is not an employee of the district and can retain her employment with ESS. . . . Please know that this was the culmination of other concerns growing with this substitute nurse, including her request to send anti-vaccination guidance to our staff and conversations that have made both our school nurses uncomfortable.

(*Id.* at Ex. 8.)[3]

On January 26, 2023, Plaintiff filed a Verified Complaint asserting twelve (12) claims against Defendants including federal claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and U.S. Const. amends. I and XIV, and a *Monell* claim, as well as state law claims. ("Verified Compl.", ECF No. 1.) On May 12, 2023, a notice of appearance by Defendants' counsel was filed on behalf of all Defendants. (ECF No. 9.) Upon motion by Plaintiff (ECF No. 10), on May 15,

---

[2] In an email in response to an inquiry from ESS, Bormann stated that the reason for Plaintiff's termination from the School District was "[Plaintiff] was found not to be a good fit in the [School District]." (*Id.* ¶ 252.)
[3] Plaintiff obtained a copy of this post-termination email correspondence through a request for records under New Jersey's Open Public Records Act, N.J.S.A §§ 47:1A-1 *et seq.* (VAC ¶ 249.)

2023, the Clerk entered default against Defendants for failure to plead or otherwise defend. That same day, Plaintiff also moved for default judgement against all Defendants. (ECF No. 11.) On May 18, 2023, Defendants filed cross-motions to vacate the default judgment (ECF No. 13) and to dismiss the Verified Complaint (ECF No 12.) On September 25, 2023, in its Prior Opinion the Court dismissed the Verified Complaint without prejudice, allowed Plaintiff leave to amend, and vacated the default. ("Prior Op.", ECF No. 17.)

On October 24, 2023, Plaintiff filed her VAC asserting two counts against Defendants Bormann and the Board of Education: (1) First Amendment Retaliation pursuant to 42 U.S.C. § 1983 ("§ 1983") and (2) First Amendment Viewpoint Discrimination also pursuant to § 1983. (*See generally* VAC.) On November 15, 2023, eight (8) days after their time to answer had expired, Defendants filed the instant Motion to Vacate Default (ECF No. 22) and Motion to Dismiss the VAC (ECF No. 23).

## II.   JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

### A. Setting Aside Default

The Clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). "A judgment setting aside the entry of default is within a district court's discretion . . . ." *Doe v. Hesketh*, 828 F.3d 159, 174 (3d Cir. 2016) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984)). "The court may set aside an entry of default for good cause. . . ." Fed. R. Civ. P. 55(c). "In exercising that discretion

and determining whether 'good cause' exists, [the Third Circuit has] instructed district courts to consider the following factors: '(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct.'" *Hesketh*, 828 F.3d. at 174 (quoting *$55,518.05 in U.S. Currency*, 728 F.2d at 195) (second alteration in original).  Delay is rarely sufficiently prejudicial to prevent vacating default.  *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982).  A defendant "must assert defenses that would constitute a complete defense" in order to show a "meritorious defense." *World Ent. Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012).  "[T]he standard for 'culpable conduct' in this Circuit is the 'willfulness' or 'bad faith' of a non-responding defendant," including "acts intentionally designed to avoid compliance with court notices"—it must be more than "mere negligence." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182–83 (3d Cir. 1984).  On the whole, the Third Circuit has advised that default is disfavored, and instructs district courts to vacate default in "doubtful cases" "so that cases may be decided on their merits." *$55,518.05 in U.S. Currency*, 728 F.3d at 194–195.)

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).  District courts conduct a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, the court "must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"

*Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages*, 926 F.2d at 1409).

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

It is well established that a "[pro se] complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (demonstrating the point that a pro se plaintiff's pleading must be liberally construed and is held to a lesser standard than that which is applied to pleadings drafted by attorneys). However, "[e]ven

8

a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013).

## IV. DISCUSSION

### A. MOTION TO VACATE DEFAULT

As stated above, in determining whether good cause exists to set aside an entry of default judgment, courts consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Hesketh*, 828 F.3d at 175. Here, all three factors weigh in favor of finding good cause to vacate the Clerk's entry of default entered against Defendants.

First, the Court considers whether Plaintiff will suffer prejudice if the Motion to Vacate Default is granted. Defendants argue that Plaintiff will not suffer any prejudice "with regard to any evidentiary issues" because there has been only a "modest delay" and not a significant delay in the litigation resulting from the default. ("MVD Moving Br.", ECF No. 22-3 at 2.) Defendants further argue that they had 21 days to respond to the VAC and filed their Motions only one (1) day late. (*See id*. at 3.) Plaintiff argues that setting aside the default could result in the loss of evidence, as many Board of Education members have left office and the State of New Jersey's mandated three-year records retention schedule has nearly run its course. (*See* Opp'n to MVD at 7.) Plaintiff further argues that she has suffered prejudice due to errors by Court staff, and by the Court's dismissal of her original Verified Complaint, which she claims have led to litigation delays. (*See id.* at 8.)

As an initial matter, the Court notes that Defendants miscalculated their deadline. In fact, they filed their Motions eight (8) days late, not one day late. (*see id.* at 9.) This is because "any

required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3).  As such, Defendants' Answer and/or Motions were due by November 7, 2023, fourteen (14) days after Plaintiff filed the VAC.  Defendants filed their Motions eight days later on November 15, 2023.

Defendants' eight-day delay is not insignificant, but the Court would be hard-pressed to find that it imposes a real prejudice on Plaintiff.  This case was filed in 2023, yet it is still at its early stages.  Notably, discovery has not even begun.  This kind of delay is rarely sufficiently prejudicial to prevent setting aside a default, especially at this early stage in the litigation.  *See Feliciano*, 691 F.2d at 656–57.  As to Plaintiff's allegations that errors by Court staff and the Court's dismissal of the original Verified Complaint have resulted in prejudice to her, it is—and will continue to be—Plaintiff's burden to plead plausible claims for relief.  Moreover, as the Court noted in its Prior Opinion, "the inconvenience and expense to a plaintiff of having to litigate on the merits do not rise to the level of prejudice required."  *Julaj v. Tau Assocs. LLC*, Civ. No. 12-1464, 2013 WL 4731751, at *4 (D.N.J. 2013).  Accordingly, this first factor weighs in favor of vacating default.

Next, the Court considers whether Defendants have raised a meritorious defense.  Here, the Motion to Dismiss asserts multiple defenses under Rule 12(b)(6) that appear to be complete defenses to Plaintiff's claims.  (*See generally* "MTD Moving Br.", ECF No. 23-3.)  Defendants are not required to prove their case at this time, but only to "set forth with some specificity the grounds for [their] defense."  *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988); *see also Hritz*, 732 F.2d at 1181 ("[A] meritorious defense is presumptively established when the allegations of defendant's answer, if established on trial would constitute a complete defense to

the action.") (cleaned up)). Thus, the Court finds that this second factor also weighs in favor of setting aside default.

Finally, the Court considers whether the default was a result of Defendants' culpable conduct. To find "culpable conduct" on the part of a non-responding defendant requires evidence of "willfulness" or "bad faith." *Hritz*, 732 F.2d at 1182. Here, Defendants responded, albeit belatedly, with the instant Motion to Vacate Default and Motion to Dismiss. Further, Defendants assert that the delay was because during the period Defendants had to respond to the VAC, schools were closed both for a holiday and for the New Jersey Education Association Convention, "thereby limiting access the amount of time Defendants had to discuss the Amended Complaint and subsequent motion with counsel." (MVD Moving Br. at 3.) The Court finds that failure to respond, on this basis, does not rise to "willfulness" or "bad faith."[4] *Hritz*, 732 F.2d at 1182. In sum, all factors weigh in favor of **GRANTING** Defendants' Motion to Vacate Default.

### B. MOTION TO DISMISS THE VERIFIED AMENDED COMPLAINT

Defendants separately move to dismiss both counts in the VAC—First Amendment claims under § 1983—pursuant to Rule 12(b)(6). They argue Plaintiff fails to assert that she was deprived of any right protected by the First Amendment. (*See generally* MTD Moving Br.) The Court agrees.

Section 1983 allows an individual to sue a "person" who, acting "under color of any statute [or] ordinance . . . of any State," violates that individual's Constitutional rights. 42 U.S.C. § 1983;

---

[4] The Court notes, however, that Defendants have now twice filed late responses to the Complaints, resulting in entries of default. (ECF Nos. 10, 21.) Plaintiff contends that she made multiple attempts to contact Defendants in late 2023 regarding their response to the VAC, but that it was only after Plaintiff requested an entry of default that Defendants responded. (*See* Opp'n to MVD at 9–10.) Defendant made no attempts to request an extension of time to respond to the Complaints. (*See id.*) *See also* Fed. R. Civ. P. 6(b). Plaintiff further contends that Defendants' counsel "has made no attempts to confer with Plaintiff." (Opp'n to MVD at 10.) The Court cautions Defendants and their counsel that further delays on their part without appropriate attempts to notify the Court and/or confer with Plaintiff could result in a finding of culpable conduct and potential sanctions.

11

*Callan v. Ocean Cnty. Dep't of Corr.*, Civ. No. 21-08450, 2022 WL 901528, at *4 (D.N.J. Mar. 28, 2022). To state a cognizable claim under § 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips*, 515 F.3d at 235 (citing *Kneipp v. Teder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). A plaintiff is required to plead two elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privilege secured by the Constitution or the laws of the United States"; and (2) that the plaintiff was deprived of her rights by a person acting under the color of state law. *Williams v. Borough of W. Chester*, 891 F.2d 458, 464 (3d Cir. 1989); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983, does not, by itself, confer any substantive rights. It only serves to enforce rights granted under the Constitution or federal law. *Mayer v. Gottheiner*, 382 F. Supp. 2d 635, 646–47 (D.N.J. 2005). Thus, the specific constitutional right alleged establishes what the controlling substantive law will be. *Ingliema v. Town of Hampton*, Civ. No. 05-3497, 2007 WL 980414, at *2 (D.N.J. Mar. 28, 2007).

Both counts in the VAC are predicated on alleged First Amendment violations based upon Plaintiff's right to free speech. The First Amendment states, in relevant part: "Congress shall make no law . . . abridging the freedom of speech. . ." U.S. Const. amend. I. Although Plaintiff includes ostensibly new allegations, they are repackaged versions of the Verified Complaint, and the VAC cannot survive a motion to dismiss for similar reasons. The Court examines each claim in turn.

    1. <u>First Amendment Retaliation Claim Under § 1983 (Count I)</u>

Plaintiff's First Amendment retaliation claim against Bormann and the Board of Education (Count I) cannot succeed because the VAC has failed to sufficiently plead that Plaintiff engaged in an activity protected by the First Amendment. (VAC ¶¶ 309–338.)[5]

---

[5] Plaintiff previously asserted, in the Verified Complaint, a claim for First Amendment retaliation. (Verified Compl. ¶¶ 148–57 (Count Four).) Her allegations here are substantially similar.

Plaintiff alleges that Bormann (in his individual and official capacities) violated Plaintiff's First Amendment right to free speech when he declined Plaintiff's request to disseminate information on a matter of "public concern"—the COVID-19 vaccine—to School District staff members and serve as a vaccine resource. (*Id.* ¶¶171–186, 316.) Plaintiff additionally alleges she engaged in the protected speech of questioning both Montanez's use of a non-contact thermometer and the authority of Bormann and the Board of Education "to require confinement, quarantines, testing, and collection of health-related data" for students and staff of the School District. (*Id.* ¶¶ 310, 318.) Plaintiff contends that her speech and the speech of other School District staff was chilled out of fear of retaliation. (*See id.* ¶¶ 303, 327.) Lastly, Plaintiff alleges that her anti-COVID vaccination viewpoint was the "motivating factor" in and "proximate cause" of her termination. (*Id.* ¶ 322–23, 332–33.) Defendants respond that Plaintiff's claim cannot succeed because her speech is not protected by the First Amendment because she was not speaking as a private citizen on a matter of public concern. (*See* MTD Moving Br. at 3–6.)

An employee suing her government employer under the First Amendment's Speech Clause must show that "she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011) ("If an employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum…."). "When employees 'make statements pursuant to their official duties,' they are not 'speaking as citizens for First Amendment purposes,' such that the speech is not of public concern and the First Amendment does not prohibit as retaliatory subsequent employer discipline." *D & D Assocs. v. Bd. of Educ.*, Civ. No. 03-1026, 2012 WL 1079583, at *19 (D.N.J. Mar. 30, 2012) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). "Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or

13

other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146–148 (1983)). Although "speech that relates solely to mundane employment grievances does not implicate a matter of public concern," *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015), "governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti*, 547 U.S. at 425, 126 S. Ct. 1951.

To assert a retaliation claim under § 1983 predicated on the First Amendment, a plaintiff must show "(1) that [she] engaged in a protected activity,[6] (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2012) (citations omitted). "[T]he 'critical question' for determining whether a public employee's speech is protected under the First Amendment 'is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.'" *Pasqua v. Cnty. of Hunterdon*, 721 F. App'x 215, 221 (3d Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 239 (2014)).

Plaintiff has not shown that any of her speech was protected by the First Amendment. Bormann's stated reasons for terminating Plaintiff's employment were: "questioning and indicating that she would not follow district protocols," "request[ing] to send anti-vaccination guidance to the staff and conversations that have made both our school nurses uncomfortable." (VAC Supp. at Ex. 8; *see also* VAC ¶ 322.) For the reasons below, this is not protected speech.

---

[6] "A public employee's statement is protected by the First Amendment when: (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (citations and internal quotation marks omitted).

14

First, the VAC does not adequately plead that she made the remainder of her speech that allegedly led to retaliation in a capacity as a private citizen. (*See* Prior Op. at 16–17.) Rather, the VAC suggests she spoke as a non-certified substitute school nurse, posing questions she had regarding the application of COVID-19 policies and procedures in the School District—including the School District's quarantine and testing protocols. (*See* VAC ¶¶ 5, 318). The VAC indicates Plaintiff sought clarity regarding COVID-19 protocols as applied to her responsibilities as a non-certified substitute school nurse. (*See, e.g.*, VAC Supp. at Ex. 5 ("[A]s one of the medical professionals here, I need to have a firm understanding from a medical safety standpoint and from a liability standpoint."); *id.* at Ex. 7 ("[O]ne of the major things I need to do my job effectively and in accordance with my scope of practice and license is written, valid, policy and procedure."); *id.* ("I explained [to Bormann] that I was uncomfortable doing things that were not found in official policy or guidance.").) In response, Plaintiff emphasizes that she was "not an employee" of the School District. (Opp'n to MTD at 12.) However, "[f]or First Amendment protection purposes, independent contractors are treated the same as public employees." *D & D Assocs.*, 2012 WL 1079583, at *61 (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996)). Plaintiff's conclusory allegations that she "engaged in advocacy as a private citizen" and that she "was not acting pursuant to her job duties" cannot override contrary factual allegations. (VAC ¶¶ 311, 315.)

Similarly, the VAC suggests Plaintiff's observations of other nurses including Montanez using a non-contact thermometer, and her conversation with Montanez objecting to the same, occurred during Plaintiff's work hours as a non-certified substitute school nurse on school property. (*See id.* ¶¶ 129, 156, 159–60, 310.) Plaintiff responds that her role as a non-certified substitute school nurse was distinct from that of a certified school nurse and she was not authorized to perform the duties delegated by law to a certified school nurse. (*See* Opp'n to MTD at 10, 15–

15

16.) She contends that her official duties "did not include advocacy" (VAC ¶ 312; Opp'n to MTD at 20), and that she spoke purely "out of concern for the health and safety of children." (VAC ¶ 310.) Regardless of any distinction Plaintiff perceives between a certified school nurse and a non-certified substitute school nurse, Plaintiff fails to explain how the health and safety of children was *not* a part of her role. For all of these reasons, the Court finds that she did not speak as a private citizen on a matter of public concern and is not entitled to First Amendment protection from any subsequent retaliation.

Second, even if Plaintiff *had* spoken as a citizen on a matter of public concern, her speech is not automatically privileged. *Guarnieri*, 564 U.S. at 386. "The First Amendment right of a public employee or an independent contractor . . . is to be weighed against 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *D & D Assocs.*, 2012 WL 1079583, at *19 (quoting *Guarnieri*, 564 U.S. at 386). A "government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garvey v. Barnegat Bd. of Educ.*, Civ. No. 07-6134, 2008 WL 2902617, at *4 (D.N.J. July 24, 2008) (quoting *Garcetti*, 547 U.S. at 418).

Here, COVID-19 vaccine use, quarantine requirements, and testing protocols are issues that definitively affected the School District's operations. At the time the events giving rise to this lawsuit took place, New Jersey "continue[d] to experience COVID-19 transmission among school-aged children" and the New Jersey Department of Health recommended that any child with COVID-19 symptoms should not return to school until they had either received a negative COVID-19 test or completed the recommended quarantine period. (VAC Supp. at Ex. 5; *see also id.* at Ex. 9 (a 2020–2021 Rumson School District Operational Plan for the COVID-19 pandemic outlining

16

three education modes—Full In-Person, Hybrid, and Full Virtual—and advising that "Parents/guardians, students, and faculty/staff members must be prepared to move from one mode to another with short notice. This includes readiness with child support, transportation, instructional plans, support services, and technology needs.").) It is clear that the COVID-19 pandemic and associated vaccine, quarantine, and testing requirements changed the manner in which teachers and staff administered daily education to their students, and the way in which students received such an education, affecting their families as well. Because of this wide-ranging impact on school operations, the Court finds that, even reading the VAC in the light most favorable to Plaintiff, the Defendants' interests in maintaining their continued, safe operation outweighed Plaintiff's interests. Defendants therefore permissibly exercised the broader discretion afforded them as a state-employer when they introduced viewpoint-neutral controls on Plaintiff's speech as well as associated disciplinary measures for failure to abide by such controls.

Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim will be **GRANTED**. Count I will be **DISMISSED WITHOUT PREJUDICE**.

    2. <u>First Amendment Viewpoint Discrimination Claim Under § 1983 (Count II)</u>

Plaintiff's First Amendment viewpoint discrimination claim against Bormann and the Board of Education (Count II) also fails as the VAC does not sufficiently allege that a government actor discriminated against Plaintiff based on her viewpoint. (VAC ¶¶ 339–60.)

Plaintiff alleges that she "held a strong, personal viewpoint in opposition to the experimental, emergency use authorized COVID-19 vaccine." (*Id.* ¶ 341.) Plaintiff alleges Bormann (in his individual and official capacities) discriminated against her when he declined her request to disseminate information about the vaccine to School District employees because he, the Board of Education, and the School District did not agree with her views. (*Id.* ¶¶ 342–343, 351,

17

354–55.) She alleges her viewpoint was the "motivating factor" for her ultimate termination. (*Id.* ¶ 350.) Defendants respond that Plaintiff did not engage in any speech protected by the First Amendment, and that Bormann and the other Defendants imposed only viewpoint-neutral restrictions on Plaintiff. (*See* MTD Moving Br. at 7–8.)

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). Viewpoint discrimination occurs "when the government targets not subject matter, but particular views taken by speakers on a subject[.]" *Id.*

Here, Plaintiff alleges her free speech was prohibited because of her viewpoint opposing the COVID-19 vaccine. However, as stated above and in the Prior Opinion, Plaintiff's request to Bormann to serve as a vaccine resource "is not protected under the First Amendment." (Prior Op. at 15.) Moreover, "even if such speech was protected, because Plaintiff sought to use the School District's email listserv as a forum,[7] Bormann 'may impose restrictions on speech that are reasonable and viewpoint-neutral.'" (*Id.* (quoting *Miller v. Goggin*, 672 F. Supp. 3d 14, 36 (E.D. Pa. May 5, 2023) (holding that because school board meetings were "limited public fora," to be used by school district residents and taxpayers "to discuss matters of concern related to the school district[,]" content-neutral restrictions on speech in such meetings were permitted).)

The VAC makes clear that Bormann, on behalf of the School District, provided reasonable, viewpoint-neutral reasons for restricting Plaintiff's speech. The allegations do not suggest Bormann discriminated against Plaintiff based on her opposition to the COVID-19 vaccine. (*See,*

---

[7] Plaintiff argues she never intended to use the School District's listserv. She proffers instead that she intended to send the draft email to staff from her personal email address, which she states can be inferred from the inclusion of her personal email in the body of the draft message. (*See* Opp'n to MTD at 25–26.) However, even assuming Plaintiff did not intend to use the listserv, her act of copying all School District staff on an email to begin a discussion sanctioned by and including School District leaders is analogous to the board meetings that constituted "limited public fora" in *Miller v. Goggin*, allowing Bormann and the School District to impose viewpoint-neutral restrictions on such speech.

18

*e.g.*, VAC ¶ 274 (stating that "it would not be appropriate to provide advocacy one way or another" and "our role as a public entity [is] to provide only the factual information available").) When Plaintiff informed Bormann she would not be receiving the COVID-19 vaccine, he respected her position and responded that this was "[n]ot a problem" and that he "just wanted to offer you the same opportunity as all our nurses. (VAC Supp. at Ex. 2.) He also stated: "As a school leader I am in no position to have an opinion on . . . whether one should or should not have a vaccine." (*Id.*) In addition, Montanez assured Bormann in confidence that "providing the informational links like [Bormann had] been doing allows staff to read, digest and make their own decisions" together with their physicians. (*Id.* at Ex. 10*.*) These communications suggest a neutral opposition to any form of vaccine advocacy, not to Plaintiff's specific viewpoint. (*See* MTD Moving Br. at 8.)

Plaintiff contends that Defendants prioritized their own views over her own and "advocate[d] for the [COVID-19] vaccine" using the School District's listserv.[8] (Opp'n to MTD at 21.) However, a close examination of the allegations regarding Bormann and Montanez's communications to staff support that these were only informational, and not viewpoint-specific, notices. For example, Montanez's email simply notified staff of the process she experienced when receiving the vaccine, including the registration process and wait time, and a photograph of her vaccination card, but did not urge staff to receive the vaccine. (*See* VAC Supp. at Ex. 3.)

Furthermore, Bormann did not prevent Plaintiff from expressing her views outside the School District. He merely advised her that "would not want anyone involved with the [S]chool

---

[8] Plaintiff states that Montanez's communication "recogniz[ing] that the topic of the COVID-19 vaccine had a political component making it a matter of public concern" implies that "certain viewpoints are disfavored in the school." (Opp'n to MTD at 22–23.) However, this argument misses the mark. Montanez's exact words were: "Like it or not working in a school has a political component and you have to be mindful when and how you should share." (VAC Supp. at Ex. 10.) Montanez's complete statement indicates that she was referring to working in a school district in general as having a political component, and not the specific issue of the COVID-19 vaccine. In an email to Bormann, Montanez states she is "uncomfortable" having vaccination information disseminated by a substitute nurse as she is "not sure what information will be relayed." (*Id.*) Importantly, the statement is consistent with a policy of avoiding the promotion of one viewpoint over another.

19

[D]istrict" to "provide advocacy one way or another," implying that she should not engage in viewpoint-specific speech while contracted with the School District. (*See* Verified Compl., ECF No. 1-11 at Ex. 10; VAC ¶ 274; MTD Moving Br. at 8.) Bormann did not single out Plaintiff; rather, he stated that "anyone involved" with the School District should not advocate for a particular viewpoint. In fact, Bormann later made clear that despite Plaintiff's termination from the School District, she could still "retain her employment with ESS" and be assigned to other school districts where she could have a chance to express her views. (VAC Supp. at Ex. 8.) Thus, the VAC fails to show that Bormann, on behalf of the School District, took part in viewpoint-specific discrimination against "anti-vaccination guidance[.]" (*Id.*; *see also* VAC ¶ 322.)

Because the VAC fails to plead that the alleged restraint applied to speech protected by the First Amendment, or that Defendants' reasons for terminating Plaintiff were viewpoint-specific, Defendants' Motion to Dismiss Plaintiff's First Amendment viewpoint discrimination claim will be **GRANTED**. Accordingly, Count II will be **DISMISSED WITHOUT PREJUDICE**.

## V.     CONCLUSION

For the reasons stated above, Defendants' Motion to Vacate Default (ECF No. 22) will be **GRANTED**. Defendants' Motion to Dismiss (ECF No. 23) will also be **GRANTED.** The VAC will be **DISMISSED WITHOUT PREJUDICE**. Plaintiff will be given leave to file a Second Amended Complaint to address the deficiencies set forth in this Opinion within thirty (30) days. Given Plaintiffs' previous unsuccessful attempts to plead her claims, the Court advises Plaintiff that failure to remedy these deficiencies in the next Complaint could result in dismissal with prejudice. An appropriate Order will follow.

Date: **June 25, 2024**

                                              s/ Zahid N. Quraishi
                                              **ZAHID N. QURAISHI**
                                              **UNITED STATES DISTRICT JUDGE**