**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JESSICA M. BRINK**, <br><br> Plaintiff, <br><br> v. <br><br> **JOHN BORMANN**, *et al.*, <br><br> Defendants. | Civil Action No. 23-497 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon Defendants John Bormann ("Bormann") and the Board of Education of Rumson's ("BOE") (collectively, "Defendants") Motion to Dismiss *pro se* Plaintiff Jessica M. Brink's ("Plaintiff") Second Amended Complaint. (the "Motion", ECF No. 33.) Defendants filed a brief in support. ("Moving Br.", ECF No. 33.) Plaintiff filed a brief in opposition to the Motion ("Opp'n Br.", ECF No. 36) as well as a Motion for Judicial Notice ("Mot. For Jud. Not.", ECF No. 35). Defendants replied to Plaintiff's opposition brief ("Reply", ECF No. 38) and filed a letter in opposition to the Motion for Judicial Notice ("Opp'n to Mot. For Jud. Not.", ECF No. 37).

  The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Plaintiff's Motion for Judicial Notice and GRANT Defendants' Motion to Dismiss.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

This is the third iteration of Plaintiff's Complaint before the Court. The Court thoroughly set forth the factual and procedural background in two prior opinions, *Brink v. Bormann*, Civ. No. 23-497, 2023 WL 62113167, at *1–3 (D.N.J. Sep. 25, 2023) and *Brink v. Bormann*, Civ. No. 23-497, 2024 WL 3159433, at *1–3 (D.N.J. June 25, 2024). Briefly, in September 2020, Plaintiff was hired as a School Nurse Permanent Substitute in the Rumson School District ("School District") by Defendant BOE. *Bormann*, 2024 WL 3159433, at *1. As a substitute school nurse, Plaintiff's job consisted of "assisting the two existing certified school nurses with their daily tasks and occasionally filling in if one of the nurses needed time off." (Second Amended Complaint ("SAC") ¶58.) Plaintiff's assigned, ordinary job duties included: (1) "monitoring the '[q]uarantine [r]oom' each morning," (2) "contacting parents/guardians of the children who were confined to the '[q]uarantime [r]oom' [and] of children to investigate absence, reported illness, travel and sick contacts," (3) "addressing emergent issues for example lost tooth, sprained ankle, symptomatic illness," (4) "arranging for the pickup of any child who reported COVID-like symptoms, as well as any of their siblings currently within the RSD," (5) "communicating with fellow nurses, Defendant Bormann, principals, and secretarial staff regarding children being quarantined from the school building," (6) "escorting school children out of school and into the custody of a parent/guardian and when necessary, explaining the RSD's policy on quarantine and testing," and (7) "documenting student-related interactions in the student's health record." (*Id*. ¶93.)

Over the next several months, Plaintiff, the Superintendent of the School District Defendant John Bormann, a certified school nurse Maria Montanez, and a school principal engaged in a series of communications about the COVID-19 vaccine and the School District's vaccination and quarantine policies. Among other things, Plaintiff informed Bormann that she

would not be getting vaccinated (*id.* ¶198), requested Bormann's "permission to email the [School District] staff and offer [her]self as a resource" for any questions about the COVID-19 vaccine (*id.* ¶217), and raised concerns about the alleged discrepancy in the quarantine period between federal and state guidelines and the School District's quarantine policy (*id.* ¶¶354, 366-369).

Following a February 1, 2021, phone call between Plaintiff and Bormann, Bormann informed Plaintiff that her placement in the School District was being terminated. (*Id.* ¶¶398, 404). Bormann then sent the following email to the BOE:

> [T]his sub nurse was questioning and indicating she would not follow district protocols. As per our contract with ESS we have the right to request a sub not be assigned to our schools. She is not an employee of the district and can retain her employment with ESS . . . . Please know that this was the culmination of other concerns growing with this substitute nurse, including her request to send anti-vaccination guidance to our staff and conversations that have made both our school nurses uncomfortable.

*Id.* ¶412.

On January 26, 2023, Plaintiff filed a twelve-count Complaint against Defendants including federal claims pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and U.S. Const. amends. I and XIV, and a *Monell* claim, as well as state law claims. (ECF No. 1.) On May 15, 2023, upon a motion by Plaintiff (ECF No. 10), the Clerk entered default against Defendants for failure to plead or otherwise defend. That same day, Plaintiff also moved for default judgment against all Defendants. (ECF No. 11.) On May 18, 2023, Defendants filed cross-motions to vacate the default judgment (ECF No. 13) and to dismiss the Complaint (ECF No. 12.) On September 25, 2023, the Court dismissed the Complaint without prejudice, allowed Plaintiff leave to amend, and vacated default. *Bormann*, 2023 WL 62113167, at *14.

On October 24, 2023, Plaintiff filed an Amended Complaint asserting just two counts against Defendants Bormann and the BOE pursuant to 42 U.S.C. § 1983: (1) First Amendment

3

retaliation, and (2) First Amendment viewpoint discrimination. (ECF No. 19.) On November 13, 2023, Plaintiff again moved for an entry of default which was entered by the Clerk's Office. (ECF No. 21.) On November 15, 2023, eight days late, Defendants filed motions to vacate default and dismiss the Amended Complaint. (ECF Nos. 22-23.) On June 24, 2024, the Court granted Defendants' motion to vacate default following its finding of "good cause." The Court additionally granted Defendants' motion to dismiss the Amended Complaint without prejudice. As to the First Amendment retaliation claim, the Court found that Plaintiff did not show that any of her alleged speech was protected and that, given COVID-19's wide-ranging impact on school operations, Defendants "permissibly exercised the broader discretion afforded them as a state-employer when they introduced view-point neutral controls on Plaintiff's speech as well as associated disciplinary measures for failure to abide by such controls." *Bormann*, 2024 WL 3159433, at *8. As to the First Amendment viewpoint discrimination claim, the Court found that the School District "provided reasonable, view-point neutral reasons for restricting Plaintiff's speech" including Defendant Bormann's statement that "it would be inappropriate to provide advocacy one way or another" and "our role as a public entity [is] to provide only the factual information available." *Id*. at *9. The Court gave Plaintiff leave to file a Second Amended Complaint to address the deficiencies set forth in its opinion within thirty days. *Id*. at *10.

On July 30, 2024, Plaintiff filed a SAC and alleges, similar to her previous pleading, two counts: (1) First Amendment retaliation, in violation of 42 U.S.C. § 1983 (Count One); and (2) First Amendment viewpoint discrimination, in violation of 42 U.S.C. § 1983 (Count Two). (ECF No. 31.) In sum, the SAC alleges that Defendants violated the First Amendment by refusing to allow Plaintiff to disseminate vaccine information to staff and parents in the School District and by dismissing her for voicing opposition to the School District's COVID-19 policies. Plaintiff

4

additionally filed a Motion for Judicial Notice to evidence the contract between the School District and ESS for substitute staffing services which Plaintiff received from a Public Records Request. (ECF No. 35.) Defendants oppose the Motion for Judicial Notice. (ECF No. 37.)

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted with the moving party "bear[ing] the burden of showing that no claim has been presented," *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). When considering a motion under 12(b)(6), the court must accept as true all the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Twombly,* 550 U.S. at 570. A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

It is well established that a "[pro se] complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*,

294 F.3d 492, 500 (3d Cir. 2002); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (demonstrating the point that a pro se plaintiff's pleading must be liberally construed and is held to a lesser standard than that which is applied to pleadings drafted by attorneys). However, "[e]ven a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013).

## IV.    DISCUSSION

Defendants argue that the SAC should be dismissed because it is based on the same factual scenario as her prior two complaints from which the Court concluded that Plaintiff did not engage in protected activity under the First Amendment. (Moving Br. at 3.) In opposition, Plaintiff argues first that she was not an employee of the School District and therefore her claims should be construed as those of a private citizen. (Opp'n Br. at 11.) Plaintiff proffers that, at the very least, a genuine issue of material fact exists as to whether she was a private or public employee. (*Id*. at 12.) Plaintiff further argues that she has sufficiently pled a claim for retaliation based on her allegations that her request to send certain vaccination guidance was a factor in her termination. (*Id*. at 16.) Plaintiff lastly contends that she has sufficiently pled that Bormann knew Plaintiff's viewpoint, perceived it to be "anti-vaccine," and restricted her speech on that basis. (*Id*. at 20.)

### A.    MOTION FOR JUDICIAL NOTICE

As an initial matter, the Court has reviewed Plaintiff's Motion for Judicial Notice pursuant to Federal Rule of Evidence 201 in which Plaintiff asks the Court to take judicial notice of the contract between ESS and the School District for the 2019–2020 school year ("ESS Contract"). (ECF No. 35.) She contends the ESS Contract demonstrates that she was an employee of ESS, not an employee of the School District or an independent contractor of the School District. (Opp'n

6

Br. at 3–4.) Defendants oppose on the basis that "it is unclear what Plaintiff is arguing these documents represent" as Plaintiff did not begin working for the School District until September 25, 2020. (Opp'n to Mot. For Jud. Not. at 2.)

The Court finds that the ESS Contract is a public record and therefore falls within the purview of Federal Rule of Evidence 201. Based on a reading of the ESS Contract and the SAC, the Court finds it is relevant to Plaintiff's allegations that she was an ESS employee rather than an employee of the School District. (SAC ¶¶63–72.) That relevance is limited, however, because: 1) the issue in dispute is not whether Plaintiff is an *actual* employee of the School District, but whether she should nevertheless be treated as one in this context given her contractor status, and 2) as Defendants point out, the term of the ESS Contract predates Plaintiff's employment. Plaintiff's Motion for Judicial Notice will nevertheless be granted.

**B.     WHETHER THE PUBLIC EMPLOYEE BALANCING TEST APPLIES**

The Court found in its prior opinion that Plaintiff was an independent contractor subject to the same treatment as a public employee and analyzed Plaintiff's claims under the *Pickering*[1] balancing test for a public employee rather than the more favorable review afforded a private citizen asserting First Amendment rights. *Bormann*, 2024 WL 3159433, at *7.

In an effort to avoid *Pickering*, Plaintiff's now asserts in both the SAC and in her briefing that she is neither a public employee nor an independent contractor. (SAC ¶¶63–72; Opp'n Br. at 10–12.) She instead designates herself as "a private employee of a private company." (Opp'n Br. at 10; *see also* SAC ¶ 64.) She also repeatedly insists throughout her newest pleading that she "spoke as a citizen." (SAC ¶¶154–56, 158–59, 182–83, 188–89, 198–201, 218–220, 245, 248,

---

[1] *Pickering v. Bd. of Educ. Of Twp. High School Dist. 205*, 391 U.S. 563 (1968).

258.) Defendants argue that the changes to the SAC do not change Plaintiff's status as an independent contractor. (Moving Br. at 4–6; Reply at 1–2.)

Plaintiff's proper status as a speaker in the context of this case is a legal conclusion. Therefore, the Court must ignore any bald assertions in the SAC as to her status on this motion to dismiss. Instead, the Court must consider whether the SAC plausibly alleges Plaintiff's status as a private citizen when she sought to engage in her allegedly protected speech.

The SAC consistently alleges that Plaintiff is employed by ESS, which in turn has a contract with the School District. (SAC ¶¶63–65.) This does not, as Plaintiff appears to believe, render her a private citizen. She was still employed by the District, if indirectly. She is a contractor, or perhaps more precisely, a *sub*contractor. *See* Black's Law Dictionary (12th ed. 2024) (defining subcontractor as "[s]omeone who is awarded a portion of an existing contract by a contractor, esp. a general contractor.") The question is therefore whether in this context a subcontractor is properly treated the same as a public employee/independent contractor, i.e., whether the balancing test under *Pickering* applies.

In *Board of County Commissioners v. Umbehr*, the Supreme Court held that independent contractors are to be treated as public employees for this purpose, but did not address subcontractors. 518 U.S. 668 (1996) ("*Umbehr*"). In that case, the parties presented factually intensive arguments regarding their employment relationship in support of whether independent contractors were entitled to bring retaliation claims at all. *Id*. at 676–77. The Supreme Court rejected the parties' arguments in favor of the *Pickering* balancing test:

> Each of these arguments for and against the imposition of liability has some force. But all of them can be accommodated by applying our existing framework for government employee cases to independent contractors. *Mt. Healthy* assures the government's ability to terminate contracts so long as it does not do so in retaliation for protected First Amendment activity. *Pickering* requires a fact-sensitive and deferential weighing of the government's legitimate interests. The dangers of burdensome litigation and the *de facto* imposition of rigid contracting rules necessitate attentive application of the *Mt. Healthy* requirement of proof of causation and substantial deference, as mandated by *Pickering, Connick,* and *Waters,* to the government's reasonable view of its legitimate interests, but not a *per se* denial of liability. Nor can the Board's and the dissent's generalization that independent contractors may be less dependent on the government than government employees . . . justify denial of all First Amendment protection to contractors. The tests that we have established in our government employment cases must be judicially administered with sensitivity to governmental needs, but First Amendment rights must not be neglected.
>
> Umbehr's claim that speech threatens the government's interests as contractor less than its interests as employer will also inform the application of the *Pickering* test. Umbehr is correct that if the Board had exercised sovereign power against him as a citizen in response to his political speech, it would be required to demonstrate that its action was narrowly tailored to serve a compelling governmental interest. But in this case, as in government employment cases, the Board exercised contractual power, and its interests as a public service provider, including its interest in being free from intensive judicial supervision of its daily management functions, are potentially implicated. Deference is therefore due to the government's reasonable assessments of its interests *as contractor.*
>
> We therefore see no reason to believe that proper application of the *Pickering* balancing test cannot accommodate the differences between employees and independent contractors. There is ample reason to believe that such a nuanced approach, which recognizes the variety of interests that may arise in independent contractor cases, is superior to a bright-line rule distinguishing independent contractors from employees.

*Umbehr*, 518 U.S. at 677–78 (emphasis in original).

The Court distills two relevant points from *Umbehr*. First, the Supreme Court has expressed its confidence in the *Pickering* balancing test to properly accommodate nuances in an

9

employment relationship. Second, *Umbehr* also acknowledges that a government defendant is owed deference to its reasonable assessment of its interests *as a contractor*. On the latter point, whatever Plaintiff's status, it cannot be reasonably disputed that the School District nevertheless remains a contractor based on allegations in the SAC and is therefore entitled to the deference *Umbehr* endorsed. The Court finds that both points militate in favor of applying the *Pickering* test to Plaintiff's claims as a subcontractor.

As for guidance beyond *Umbehr* itself, neither the parties nor the Court were able to identify any relevant cases addressing this issue in this circuit.[2] Plaintiff aptly cites *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir. 2011). (Opp'n Br. at 10.) In that case, the Ninth Circuit observed that it was "not immediately obvious" how to treat a plaintiff who was an employee of a municipal contractor, i.e., a subcontractor. 632 F.3d at 1101. The court of appeals conducted a detailed factual analysis, and ultimately concluded that:

> Although Clairmont was not a Municipal Court employee, given the nature of the relationship between the court and [contractor] SMH, the nature of the services provided by SMH, and Clairmont's role in the provision of such services, we conclude that his relationship to the Municipal Court was analogous to that of an employer and employee. Further, given the Probation Unit's need to ensure that SMH's services were properly provided to court-ordered Treatment participants, the balance tips in favor of treating Clairmont as a public employee for purposes of determining whether he has alleged a viable First Amendment retaliation claim.

---

[2] In *Hayes v. Buffalo Municipal Housing Authority,* Civ. No. 12-578S, 2013 WL 5347544, at *4 (W.D.N.Y. Sept. 23, 2013), the district court assumed in passing that a subcontractor would be treated as a public employee ("In this case, applying what is a 'practical' test, see [*Garcetti*, 547 U.S. at 424], it cannot seriously be maintained that [the plaintiff] was speaking as part of his official duties as a subcontractor when he reported Fischer to the FBI.") *But see Lipkin v. George*, Civ. No. 23-127, 2024 WL 1119958, at *3 n.2 (D. Conn. Mar. 14, 2024) (distinguishing *Umbehr* on the basis that "Plaintiff is not an independent contractor with the City of New Haven. Their employer is an independent contractor and this is not a situation where the City of New Haven terminated its contract with CS-HHC.")

*Id*. at 1102. Defendants distinguish *Clairmont* based on other facts. (Reply at 2.) Plaintiff argues that *Clairmont* was decided on summary judgment and that there is not yet an adequate factual record in this case to permit a similar analysis. (Opp'n Br. at 10.) The Court disagrees.

Even reading the SAC in a light most favorable to Plaintiff, the following can be discerned from its allegations. Plaintiff worked on school grounds four days per week from 8 a.m. to 1 p.m. (*See* SAC ¶86.) During her tenure, Plaintiff was in regular contact and communication with the school staff and administration. (*See generally id*.) Her tasks were supervised by a Certified School Nurse who was an employee of the School District. (*See id*. ¶92.) Plaintiff's job duties included: addressing children's emergent health issues; communicating directly with parents/guardians of children with health issues; communicating on quarantine issues with school staff members, Defendant Bormann, and principals; and documenting student-related interactions in the student's health record. (*Id*. ¶93.) Based on the foregoing, the Court finds that the SAC pleads that Plaintiff's personal involvement with students, faculty, and administration was substantial and that a high degree of trust was placed in Plaintiff by both ESS and the District. The Court therefore concludes, consistent with the rationale of the Ninth Circuit, that the relationship between Plaintiff and the District "was analogous to that of an employer and employee" for the purpose of balancing Plaintiff's right to free speech against Defendants' rights as a contractor.[3]

---

[3] It should be noted that although the Court considered whether to direct the parties to conduct limited discovery as to their employment relationship, as a practical matter, it finds there is nothing to be gained factually for Plaintiff in such discovery. Notably, Plaintiff does not say what discovery she would even seek. Moreover, she has already obtained a copy of the ESS Contract (if an out-of-date one) although not especially persuasive because it only establishes that Plaintiff was not directly employed by the School District, a fact Defendants do not dispute. Additionally, as to any employment agreement Plaintiff might have had with ESS, Plaintiff is conspicuously silent. She has not referred to it in any of her three pleadings or her briefing in this matter, much less provided a copy. Presumably, she already has that agreement or at the very least could reasonably have obtained a copy of it without the aid of discovery. Finally, Plaintiff certainly has personal knowledge as to how she was treated while employed by the School District. Based on the foregoing, the Court separately finds there would be no value in directing the parties with even limited discovery on this issue.

*See Clairmont*, 632 F.3d at 1102. Accordingly, the Court will apply the balancing test under *Pickering* to this case.

###   C.   RETALIATION CLAIM

To assert a plausible First Amendment retaliation claim, a typical plaintiff must allege that: "(1) [she engaged in] constitutionally protected conduct, (2) [there was] retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) [there was] a causal link between the constitutionally protected conduct and the retaliatory action." *Conard v. Pennsylvania State Police*, 902 F.3d 178, 183 (3d Cir. 2018).

Public employees, however, "accept certain limitations on [their] freedom" when they enter government service, including under the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 418–19 (2006); *see also Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968) ("[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."). Therefore, unlike a private citizen, a public employee's speech is only considered protected under the first prong if: "(1) the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public based on its needs as an employer." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 753 (3d Cir. 2019) (internal quotation marks omitted); *see also Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 283 (3d Cir. 2004) ("[W]hile government employers . . . have the authority to mange their works–including the authority to restrict various kinds of expression–the First Amendment imposes limits on that authority when the employees are speaking about matters of public concern.")

When determining whether an individual speaks as a public employee versus a private citizen, the "'critical question' is 'whether the speech at issue is itself ordinarily within the scope of an employee's duties,'" and not merely whether the speech "concerns those duties." *Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 864 (3d Cir. 2019) (quoting *Lane v. Franks*, 573 U.S. 228 (2014)). Courts in this Circuit have inquired "whether a public employee's speech was informed by or the result of his or her primary job duties." *Id*. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

To the extent that Plaintiff's conduct and statements were speech, the Court finds that it was all part of her role as a substitute school nurse. Contrary to Plaintiff's position, she did not simply "sp[eak] as a citizen" in her efforts to "bring to light potential wrongdoing or breach of public trust on the part of government officials." (SAC ¶158.) Rather, Plaintiff's conduct concerning the importance of "consistency" of, among other things, the School District's guidance on its quarantine policy that Plaintiff "g[a]ve [the District's] students, families and staff" (ECF No. 31-1, Ex. 19), was "part of the role [she] was paid to perform on an ordinary basis." *Javitz*, 940 F.3d at 866. (*See* SAC ¶93, "contacting parents/guardians of the children who were confined to the 'quarantine room'," and "explaining the [School District's] policy on quarantine and testing."). For example, Plaintiff relayed to Bormann via email that, "because it relates to the confusion we had this morning," Plaintiff was "working on a flow chart of sorts, to make the decisions easier and consistent" regarding the differences between isolation and quarantine and which type of tests the state recommended children complete. (ECF No. 31-1, Ex. 19.)

Despite Plaintiff's attempts to conclusively plead that she initiated discussions "as a citizen," for example, "with Principal Gibbons, and the Certified School Nurses regarding the clinical soundness of the COVID-19 Screening Form and the confinement of healthy students to the '[quarantine [r]oom,'" stating such does not make it so. The SAC reflects that that Plaintiff's conduct and statements in these instances were clearly in the realm of, at the heart of, or in pursuit of her ordinary job duties as a substitute school nurse. (SAC ¶181.) *See De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017) ("[A]n employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee[.]"). Or, put another way, "a public employee speaks pursuant to employment responsibilities . . . [when] there is no relevant analogue to speech by citizens who are not government employees." *Garcetti*, 547 U.S. at 424. The Court finds that the SAC, even given its most liberal reading, fails to plausibly allege that Plaintiff acted as a private citizen and instead supports the conclusion that Plaintiff's speech was made pursuant to her official job duties. The Court reaches this conclusion "even though the COVID-19 pandemic was clearly a matter of public concern." *Dennison v. Indiana Univ. of Pennsylvania*, Civ. No. 22-2649, 2023 WL 8595426, at *5 (3d Cir. Dec. 12, 2023) (affirming the District Court's entry of summary judgment against a public employee's retaliation claim, reasoning that the Plaintiff's conduct "while related to a matter of public concern, were not just adjacent to her official duties; they were at the heart of her duties").

The Court will therefore GRANT Defendants' Motion to Dismiss Plaintiff's retaliation claim.

14

### D. VIEWPOINT DISCRIMINATION CLAIM

Plaintiff's First Amendment viewpoint discrimination claim also fails because the SAC does not sufficiently allege that Defendants discriminated against Plaintiff based on her viewpoint. The SAC alleges that Bormann restricted Plaintiff's speech because he perceived her viewpoint to be "anti-vaccine." (SAC ¶236). Defendants argue that Bormann's restrictions on use of the email server were view-point neutral. The Court agrees.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). "[I]t is also well settled that the government need not permit all forms of speech on property that it owns and controls." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (citations omitted). "[T]he extent to which the Government can control access depends on the nature of the relevant forum." *Pomicter v. Luzerne Cnty. Convention Center Authority*, 939 F.3d 534, 540 (3d Cir. 2019) (quoting *U.S. v. Kokinda*, 497 U.S. 720, 726 (3d Cir. 2019)). In non-public fora, unlike traditional public fora, "[t]he government may issue content-based regulations on communicative activity . . . provided they are 'reasonable in light of the purpose served by the forum and are viewpoint neutral." *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. School Dist.*, 233 F. Supp. 2d 647, 656 (D.N.J. 2002) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44–46 (1983)). "In a nonpublic forum, speech restrictions need only be reasonable, 'a much more limited review' than applied in public forums." *Pomicter*, 939 F.3d at 540 (quoting *Lee*, 505 U.S. at 679).

Several courts –including the Supreme Court –have held that government mail and email systems are nonpublic forums. *See Perry*, 460 U.S. at 46–47 (holding that a public school's "mail facilities" was a nonpublic forum because there was "no indication . . . that the school mailboxes

15

and interschool delivery system are open for use by the general public"); see also *Page v. Lexington Cnty. Sch. Dist. One*, 531 F.3d 275, 285 (4th Cir. 2008) (finding that "School District's e-mail facility" was a nonpublic forum because there was "no suggestion that" the public "had access to the School District's e-mail facility"). Assuming without deciding that a school email listerv is a nonpublic forum, Defendants could restrict a speaker's access to it "so long as the distinctions drawn are viewpoint neutral and reasonable in light of the purpose served by the forum." *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 189 (2007); see also *Child Evangelism Fellowship of N.J.*, 386 F.3d at 526 (holding that "even if" school district's forum was "limited" or "closed," school district "still could not engage in viewpoint discrimination").

Bormann's denial of Plaintiff's request to send a listerv wide email to School District staff that she would "like to offer [her]self as a resource regarding any questions you may have about the Covid vaccine" was content and viewpoint neutral. Bormann's purpose in rejecting Plaintiff's requested speech, as plainly stated in his email response to Plaintiff, was because the School District's role was "to provide only the factual information available from government institutions we are required to follow [and] for families to seek guidance from their own physicians if they have questions." (ECF No. 31-1, Ex. 11.) Bormann further explained that he "would not want anyone involved with the school to serve in that capacity as it would put the district in jeopardy if one followed the advice and it had a negative impact." (*Id.*) Contrary to Plaintiff's allegation that the School District allowed pro-vaccine speech, the exhibits show that the emails sent by school nurse Montanez simply provided links to the Center for Disease Control's website and did not purport to offer herself or anyone else in the District as a guide on the COVID-19 vaccine.[4] (ECF

---

[4] Therefore, the SAC's allegation stemming from Bormann's email after Plaintiff's dismissal that she "request[ed] to send anti-vaccination guidance" does not affect the Court's conclusion. The SAC reflects that Bormann prohibited both pro-vaccination and anti-vaccination messaging to be distributed on the email server.

No. 31-1, Ex. 7.)  Given that Plaintiff's proposed email also stated that Plaintiff "has invested a significant amount of time researching vaccines and would welcome questions" and no other School District member had sent a similar email on the server, the Court finds that the SAC does not sufficiently plead a viewpoint discrimination claim.

### E. DISMISSAL WITH PREJUDICE

The Court afforded Plaintiff three opportunities to plead viable claims.  The SAC again fails to do so.  Under the circumstances, the Court finds that further amendment would not cure the deficiencies identified herein and would therefore be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002).   Accordingly, dismissal with prejudice is appropriate.

### V. CONCLUSION

For the reasons stated above, the Court will GRANT Plaintiff's Motion for Judicial Notice and GRANT Defendants' Motion to Dismiss.  The Court will DISMISS WITH PREJUDICE the SAC and instruct the Clerk's Office to mark this matter CLOSED.  An appropriate Order will follow.

Date: March 24, 2025

                                                    s/ Zahid N. Quraishi  
                                                   **ZAHID N. QURAISHI**  
                                                   **UNITED STATES DISTRICT JUDGE**